In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00005-CR


______________________________




HAROLD EDWARD HISLOP, JR., Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 19767




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross


Concurring Opinion by Justice Grant


O P I N I O N



 Harold Hislop, Jr. appeals from his conviction by a jury for the offense of murder. 
The jury assessed his punishment at seventy-five years' imprisonment and a $10,000.00
fine. Hislop raises a single issue on appeal, contending the trial court committed reversible
error by admitting into evidence a letter containing an apparent confession to the crime
because the State did not provide handwriting analysis or use other methodology to show
Hislop had written the letter.

 Hislop, a forty-two-year-old physically disabled man, lived with his eighty-year-old
mother, and the evidence shows he had acted as her caretaker for approximately ten
years. There is also evidence Hislop's mother had bone cancer, and her prognosis was
extremely poor. Because of the mother's physical condition, as well as Hislop's infirmities,
a neighbor became concerned when Hislop informed him he was hiring a nurse and
planned to take his mother to New England in a motor home. The neighbor attempted to
confirm the story without success. Shortly thereafter, Hislop called the neighbor's teenage
daughter and told her his mother had just died and he could not continue living. When the
neighbor arrived at Hislop's house, he found Hislop with several firearms, which he took
from Hislop. When police arrived, they found the mother's bedroom sealed with masking
tape and found towels stuffed under the door. 

 They opened the door, were met by a terrible odor, and found the mother's
decomposing body. She had been stabbed thirty-nine times and had been dead for at
least three days.

 Hislop directed the police to a sealed, handwritten letter lying on the television. The
letter states in part that, "I, Harold Edward Hislop Jr. did terminate the life of my suffering
80 yr old mother . . . so that she would no longer be suffering . . . ." It is then signed
"Harold E. Hislop Jr." Hislop admitted to a neighbor, in front of two police officers, that he
had killed his mother and that it was a mercy killing. Hislop's defense was based on the
theory that he did not kill his mother, but that his estranged sister had done so and had
framed him.

 We now turn to Hislop's contention regarding the admissibility of the letter. Counsel
objected to the admission of the letter into evidence as follows: "Your Honor, until further
evidence is exhibited to show who wrote these letters, I'm going to object to their content
being hearsay." The court overruled the objection and admitted the letter into evidence.

 Hislop objected to the introduction of the letter on the ground it was inadmissible
hearsay. The trial court overruled the hearsay objection without stating the basis for its
ruling. The out-of-court declarations of a defendant, offered for the truth of matters
asserted therein, are not considered hearsay when they are offered against that party. 
Tex. Code Crim. Proc. Ann. art. 38.21 (Vernon 1979); Tex. R. Evid. 801(e)(2); Lewis v.
State, 815 S.W.2d 560, 568 (Tex. Crim. App. 1991). Generally, the acts or declarations
of an accused from which guilt may be inferred are receivable against the accused as
admissions. Russell v. State, 598 S.W.2d 238, 254 (Tex. Crim. App. 1980); Fontenot v.
State, 708 S.W.2d 555, 558 (Tex. App.-Houston [1st Dist.] 1986, pet. dism'd). 

 In this case, if the letter is shown to be Hislop's, it falls within the category of
admissions by him and is therefore not hearsay. 

 Counsel argues that the objection was actually directed to the question of whether
there was proof the document was actually written by Hislop. The way the objection was
phrased, this is not an accurate description. Counsel objected that the letter was
hearsay-until testimony was elicited to show Hislop wrote the letter. The objection is not
based on hearsay, however, but is instead a complaint that there was insufficient evidence
to permit the court to make an initial determination that the letter was written by Hislop. 

 Hislop complains on appeal that the entire basis for his objection was the State's
failure at that point to lay a predicate for the introduction of the letter to show that Hislop
was its author. This type of objection is properly raised under Rule of Evidence 901, which
provides in part that "[t]he requirement of authentication or identification as a condition
precedent to admissibility is satisfied by evidence sufficient to support a finding that the
matter in question is what its proponent claims." Tex. R. Evid. 901. The objection made
is arguably insufficient to preserve this complaint for appellate review. Tex. R. App. P. 33.1. 

 In this case, although the objection was imprecisely made, we find it sufficient to
direct the trial court's attention to the complaint and thus adequate to preserve the
complaint for review. 

 Rule 901 contains an illustrative list of ways in which a document can be
authenticated. None of those options was exercised in this case. There was no
handwriting comparison either by an expert, the trier of fact, or by a nonexpert witness, and
there was no testimony by a witness with knowledge. At the time the letter was admitted
into evidence, a paramedic had testified Hislop told him he had used a knife and killed his
mother. Further, Officer George Robinson testified he found two letters underneath a
billfold, which were on top of the television beside the couch on which Hislop was lying. 
The letters were handwritten and contained the signature of "Harold E. Hislop Jr." and were
in envelopes containing his return address. One letter apparently contains a confession
by Hislop to the crime, and the other is a letter to his veterinarian, containing $100.00,
asking the veterinarian to care for his cat. Authentication as a condition precedent to
admissibility is established by evidence that the matter in question is what its proponent
claims. Tex. R. Evid. 901(a); Mega Child Care, Inc. v. Texas Dep't of Protective and
Regulatory Servs., 29 S.W.3d 303, 308 (Tex. App.-Houston [14th Dist.] 2000, no pet.).

 At the time the letter was admitted into evidence, there was also evidence before
the court that Hislop had called a neighbor stating his mother was dead, testimony from
the neighbor that Hislop had admitted stabbing his mother, testimony from a paramedic
that Hislop had admitted stabbing his mother, and the fact that the documents were found
in close proximity to Hislop, underneath his billfold, on the television. Both letters
contained what appeared to be Hislop's signature and return address. 

 There are cases holding that a signature on a document is insufficient, standing
alone, to establish the authenticity of the document. See Missouri v. Davis, 849 S.W.2d
34, 41 (Mo. Ct. App. 1993), citing Cummins v. Dixon, 265 S.W.2d 386, 394 (Mo. 1954). 
That is not, however, our situation. In addition to Hislop's signature on the documents and
his return address on the envelopes, there are also his oral admissions that he had
committed the offense in the manner described by the letter, the proximity of the letters to
him, and their location under his own billfold. We find this combination of factors serves
to provide an adequate level of authentication to meet the initial criteria of Rule 901 and
provides the necessary condition precedent to admissibility.

 Even if the letter was not properly admitted, it is not apparent the error would affect
Hislop's substantial rights (1) under the facts elicited at trial. The State presented evidence
regarding multiple statements made by Hislop admitting the crime, evidence admitted after
the letter had been admitted that Hislop told the police to look for the letters and where
they were located, and that Hislop told an officer there was a written confession in one
envelope and a letter to the veterinarian in the other envelope. Harm is not shown under
these facts.

 The judgment is affirmed.

 

 Donald R. Ross

 Justice




CONCURRING OPINION


 The State is required under Rule 901 to provide sufficient evidence to show that the
proposed exhibit is what it purports to be. Tex. R. Evid. 901.

 The following constitutes the predicate laid for purposes of introducing the letter
purportedly written by Hislop:

 Q. Okay. And I hand you what's been marked as State's Exhibit
Number 10.


 A. It's a billfold and two letters what we located on top of the TV
that was located on the -- the -- I can't think of what it's called. It was located
right beside the couch on the coffee table.


 Q. Okay. Okay. The TV was on the coffee table right beside the
couch?


 A. Correct. They were located on top of the TV part.


 Q. Okay. I'll hand you what's been marked as State's Exhibit
Number 19, and ask you if that's one of the letters that was depicted in
State's Exhibit Number 10.


 A. Yes, sir, it is.


 Q. Okay. You found that on top of the TV underneath the billfold?


 A. Yes, sir.


 Q. I'll hand you what's been marked as State's Exhibit Number 20,
and ask you if that's one of the letters that's depicted in State's Exhibit
Number 10.


 A. Yes, sir, it is.


 MR. MOSS: Your Honor, we offer State's Exhibit
Number 20 and State's Exhibit Number 19, and their contents.


 MR. NIX: Your Honor, until further evidence is exhibited
to show who wrote these letters, I'm going to object to their content being
hearsay.


 THE COURT: Let me see them. Overrule the objection. 
The exhibits are admitted.


 At that point in the trial, the prosecution read the letter in question to the jury. No
evidence of any nature was offered to show that the letter in question contained the
handwriting or signature of Hislop, not by comparison, not by a writing expert, not by a
person familiar with Hislop's handwriting, and not by a person who saw him write the letter. 
Although not authenticated, the majority opinion in justifying its admission in evidence
refers to the exhibit as containing Hislop's signature.

 The majority suggests that the proper objection was not made, but an immediate
objection was made that no evidence had been offered to show who wrote the letter and
that the content was hearsay. Tex. R. Evid. 901 requires authentication, and in the present
case, there was none. Thus, there was no evidence to show that the proposed exhibit was
what it was purported to be, i.e., a letter written by Hislop. The content of the letter was
hearsay inasmuch as it was an out-of-court statement offered into evidence to prove the
truth of the matter asserted. See Tex. R. Evid. 801(d). The statement could have been
admitted under one of the exceptions to the hearsay rule, e.g., Tex. R. Evid. 803(24), a
statement subjecting the declarant to criminal liability, if the State had first established that
the written statement was made by Hislop. 

 The majority opinion seeks to bootstrap this out-of-court declaration by assuming
that it is a declaration made by the defendant and offered against him; however, to fit within
the exception, there must first be evidence that the letter was a statement made by the
defendant. (2)

 I concur in the results in the alternative reason set forth by the majority opinion that
this is not a reversible error because of the other strong evidence introduced against Hislop
that proves the same matters as the content of the letter. Pursuant to Tex. R. App. P.
44.2(b), such an error must be disregarded when it does not affect the substantial rights
of the defendant.


 For the reasons stated, I concur. 


 Ben Z. Grant

 Justice


Date Submitted: November 8, 2001

Date Decided: November 30, 2001


Publish

1. Tex. R. App. P. 44.2(b).
2. I recognize that in some situations, the content of a document may be used along
with other circumstances to justify its admission into evidence. In construing the similar
federal rule, the Eighth Circuit determined that the content of a writing may be used to aid
in determining the identity of the declarant. United States v. Wilson, 532 F.2d 641, 644
(8th Cir. 1976). This can occur when the writing deals with a matter sufficiently obscure
or particularly within the knowledge of the person so that the content of the writing is not
a matter of common knowledge. See 5 J. Weinstein & M. Berger, Weinstein's Evidence,
P 901(b)(4)[01], at 901-49 (1990).


s contend was authorized because the contract contained a "variable rate carryover
provision." Vanderbilt claims the contract allows it to carry over the amount of any rate
change which was not applied in the prior annual adjustment due to the one percent cap
on interest rate increases. Shortly before the filing of this suit, the Poseys obtained
modification of the contract, fixing their interest rate at 10.99 percent per annum. 
          Vanderbilt services the mortgages on thousands of manufactured houses. As of
November 25, 2002, Vanderbilt serviced mortgages on over 150,000 installment sales
contracts, with an aggregate dollar amount of almost five billion dollars. Customary
servicing obligations include collecting and recording payments, communicating with
obligors, investigating payment delinquencies, providing billing and tax records to obligors,
and maintaining internal records with respect to each contract. Vanderbilt also calculates
distributions to the beneficial owners of the mortgages and provides related data
processing and reporting services. The majority of these installment sales contracts and
loan agreements were purchased from dealers indirectly owned by Clayton Homes,
Incorporated. Most of these installment sales contracts are secured by security interests
in the manufactured homes and/or by liens on the real estate on which the related
manufactured homes are located. Since 1989, Vanderbilt has originated variable rate
installment contracts. In the 1999 fiscal year, Vanderbilt serviced approximately 11,594
variable rate contracts. 
          The trial court held a class certification hearing December 29, 2003. In an order
signed December 31, 2003, the trial court found that the Poseys had met the requirements
of Rule 42(a) and (b)(4), and certified a class under Rule 42(b)(4). In the order, the trial
court concluded that Tennessee law applied to the transaction and explained how the
discovery would be conducted, the trial court's procedures for mediation, and that a special
master would be appointed. No findings of fact or conclusions of law were entered or
requested. 
          Vanderbilt raises five issues on appeal. It contends the trial court erred in certifying
a class without consideration and analysis of the laws of the forty-four states implicated by
the residences of putative class members, in applying the TCPA to all claims, by certifying
the class under Rule 42(b)(4) because no common issues exist or predominate, by
certifying a class with the Poseys as representatives because they are neither typical nor
adequate class representatives, and in certifying a class because a class action is not a
superior method for trying these claims. The Poseys raise three issues on cross-appeal. 
They argue the trial court erred in denying injunctive relief under the TCPA, in reading into
the statute words, terms, and conditions not in the statute, and erred in refusing to certify
a class under Rule 42(b)(2). 
Standard of Review
          We review the decision of the trial court in certifying or refusing to certify the class
for abuse of discretion. Bailey v. Kemper Cas. Ins. Co., 83 S.W.3d 840, 847 (Tex.
App.—Texarkana 2002, pet. dism'd w.o.j.); W. Teleservices, Inc. v. Carney, 37 S.W.3d 36,
40 (Tex. App.—San Antonio 2000, no pet.). The trial court abuses its discretion when it
does not properly apply the law to the undisputed facts, when it acts arbitrarily or
unreasonably, or when its ruling is based on factual assertions unsupported by the record. 
Alford Chevrolet-Geo v. Jones, 91 S.W.3d 396, 399–400 (Tex. App.—Texarkana 2002,
pet. denied). 
          Vanderbilt argues that Bernal changed the standard of review to a higher standard
than abuse of discretion. See Southwestern Ref. Co. v. Bernal, 22 S.W.3d 425, 435 (Tex.
2000). Bernal cannot be reasonably interpreted to change the standard of review. The
Texas Supreme Court in Bernal urged that a cautious approach to class certification is
essential and rejected the "approach of certify now and worry later." Id. The court held
that the trial court must conduct a "rigorous analysis" of whether the certification
requirements have been met before ruling on class certification, but reaffirmed we should
review the trial court's decision based on an abuse of discretion. Id. The Corpus Christi
court of appeals has explicitly rejected the argument that Bernal created a more stringent
review. Snyder Communications v. Magana, 94 S.W.3d 213, 223–27 (Tex. App.—Corpus
Christi 2002, no pet.), rev'd on other grounds, No. 03-0036, 2004 Tex. LEXIS 739 (Tex.
June 25, 2004). Our sister court relied on federal caselaw, which has long required federal
district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are
met before certifying a class. Id. at 224; see Fed. R. Civ. P. 23. Federal appellate courts
have held that "the term 'rigorous analysis' does not mean that a reviewing court must
apply a less deferential standard of review than abuse of discretion, but rather that the trial
court must exercise its discretion within the framework of the rule." Snyder, 94 S.W.3d at
224; see Fed. R. Civ. P. 23; Gulf Oil Co. v. Bernard, 452 U.S. 89, 100 (1981). The Texas
Supreme Court noted in Bernal that Texas Rule of Civil Procedure 42 is patterned after
Federal Rule of Civil Procedure 23 and that federal decisions and authorities interpreting
current federal class action requirements are persuasive authority. Bernal, 22 S.W.3d at
433; see Ford Motor Co. v. Sheldon, 22 S.W.3d 444, 452 (Tex. 2000). We agree with our
sister court that Bernal's use of the term "rigorous analysis" instructs us to review the
certification under an abuse of discretion standard, provided that the trial court exercised
its discretion within the framework of the rule.
Certification of a Class
          Under Rule 42 of the Texas Rules of Civil Procedure, all class actions must satisfy
the following four threshold requirements: (1) the class is so numerous that joinder of all
members is impracticable, (2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or
defenses of the class, and (4) the representative parties will fairly and adequately protect
the interests of the class. Tex. R. Civ. P. 42(a); Bernal, 22 S.W.3d at 433. In addition to
the above prerequisites, the class action must satisfy at least one of the subdivisions
contained in Rule 42(b).


 Bernal, 22 S.W.3d at 433. "Courts must perform a 'rigorous
analysis' before ruling on class certification to determine whether all prerequisites to
certification have been met." Id. at 435; see Henry Schein, Inc. v. Stromboe, 102 S.W.3d
675, 690 (Tex. 2002). This rigorous analysis includes indicating how the claims will likely
be tried so that conformity with Tex. R. Civ. P. 42 can be meaningfully evaluated. Id. at
690–91. In conducting this analysis, courts should go "beyond the pleadings" and
understand the "claims, defenses, relevant facts, and applicable substantive law" when
determining whether the requirements of certification should be met. Bernal, 22 S.W.3d
at 435. In reviewing the certification of a class, we must be certain "the trial court did not
simply 'certify first' without engaging in a serious analysis of the action and the apparent
propriety of certifying the class." Alford Chevrolet-Geo, 91 S.W.3d at 406. We are aware
that "the trial court may modify the class definition or otherwise alter its ruling at any time
during the proceeding should it become apparent such a change is necessary." Id.; see
Intratex Gas Co. v. Beeson, 22 S.W.3d 398, 407 (Tex. 2000).
          We conclude the trial court abused its discretion in certifying the class under Rule
42(b)(4) because the Poseys have not met their burden of showing there are common
issues of law or fact. We will first address why the Poseys did not show there are common
issues of law. Next, we will examine why the Poseys did not meet their burden of proving
there are common issues of fact. We also conclude the trial court did not abuse its
discretion in refusing to certify a class under Rule 42(b)(2).
Common Issues of Law
          To determine if there are common legal issues, we must determine the applicable
law. Thus, the first issue we must consider is whether the trial court erred in determining
that Tennessee law applies to the claims of the entire class. The first step in the choice
of law analysis is to determine if the laws of the forty-four jurisdictions differ. If the laws
differ, the next step is to examine all transactions and determine if any state has the "most
significant" contacts with all the transactions. The third step is to determine whether an
exception or limitation applies which prevents the application of the law of the state with
the "most significant" contacts. We determine the Poseys did not meet their burden of
showing that the laws of the forty-four states do not conflict and did not provide the court
with a sufficiently extensive choice of law analysis. Last, we will examine the remaining
arguments asserted by the parties. According to Vanderbilt, a nationwide class cannot be
certified as a matter of law. The Poseys argue that the "False Conflicts" doctrine requires
application of Tennessee law. We reject both of these arguments.
          Texas courts must perform the choice of law analysis before certifying a class. 
While in the past it was permissible to postpone choice of law analysis until after
certification, the Texas Supreme Court now requires performance of choice of law analysis
before a class is certified. Compare Compaq Computer Corp. v. Lapray, 135 S.W.3d 657,
672 (Tex. 2004), with Microsoft Corp. v. Manning, 914 S.W.2d 602, 607 (Tex.
App.—Texarkana 1995, writ dism'd), and Weatherly v. Deloitte & Touche, 905 S.W.2d 642,
650 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.). 
          When determining choice of law questions, Texas courts should follow the choice
of law directives of its own jurisdiction. See Maxus Exploration Co. v. Moran Bros., 817
S.W.2d 50, 54 n.6 (Tex. 1991); Robertson v. Estate of McKnight, 609 S.W.2d 534, 536–37
(Tex. 1980). Thus, we apply Texas choice of law rules in determining whether the law of
various states or Tennessee law should apply. The legal determination of which state's
law applies is subject to de novo review of the record. Minn. Mining & Mfg. Co. v. Nishika
Ltd., 955 S.W.2d 853, 856 (Tex. 1996) (certifying question to Supreme Court of
Minnesota); Busse v. Pac. Cattle Feeding Fund #1, Ltd., 896 S.W.2d 807, 813 (Tex.
App.—Texarkana 1995, writ denied); see Torrington Co. v. Stutzman, 46 S.W.3d 829, 848
(Tex. 2000); Duncan v. Cessna Aircraft Co., 665 S.W.2d 414, 421 (Tex. 1984); see also
Huddy v. Fruehauf Corp., 953 F.2d 955, 956 (5th Cir. 1992). However, the determination
of the state contacts to be considered involves a factual inquiry which requires deference
to the trial court's determination. Hughes Wood Prods., Inc. v. Wagner, 18 S.W.3d 202,
204–05 (Tex. 2000); Ford Motor Co. v. Aguiniga, 9 S.W.3d 252, 257 (Tex.
App.—San Antonio 1999, pet. denied). 
          Traditionally, a jurisdiction's body of laws was thought to have no effect outside its
own territory, but courts would recognize foreign law under the doctrine of comity or
through a theory of "vested rights." See Slater v. Mexican Nat'l R.R. Co., 194 U.S. 120,
126 (1904); Cal. v. Copus, 158 Tex. 196, 309 S.W.2d 227, 229–33 (1958). However,
Texas courts have abandoned the lex loci delecti approach in favor of the less restrictive
approach combining the methodologies of a governmental policy analysis and the
"significant relationship" approach embodied in the Second Restatement of Conflicts. See
Duncan, 665 S.W.2d at 421; Gutierrez v. Collins, 583 S.W.2d 312, 318–19 (Tex. 1979);
see also Restatement (Second) of Conflicts § 145 (1971). 
          The first step in deciding choice of law is whether the laws of the various
jurisdictions conflict. When a party contends that the law of another jurisdiction should
apply, Texas courts will first examine if the applicable laws conflict. If the laws do not
conflict, there is no need to resolve the choice of law problem. Vandeventer v. All Am. Life
& Cas. Co., 101 S.W.3d 703, 711–12 (Tex. App.—Fort Worth 2003, no pet.); Saint Paul
Surplus Lines Ins. Co. v. Geo Pipe Co., 25 S.W.3d 900, 903 n.2 (Tex. App.—Houston [1st
Dist.] 2000, pet. dism'd by agr.); see Duncan, 665 S.W.2d at 419–21. There are no
conflicts if there are no differences between the laws of the respective states concerning
the issues relevant to the case. See Duncan, 665 S.W.2d at 419–21; Vandeventer, 101
S.W.3d at 711–12; Young Ref. Corp. v. Pennzoil Co., 46 S.W.3d 380, 385 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied); Saint Paul Surplus Lines Ins. Co. , 25 S.W.3d
at 903 n.2. We note there is no Tennessee residence requirement in order to bring an
action under the TCPA. Steed Realty v. Oveisi, 823 S.W.2d 195, 198 (Tenn. Ct. App.
1991).
          The Poseys have not shown that the laws of Tennessee and the other forty-three
states do not differ. In Henry Schein, Inc., the Texas Supreme Court determined that the
laws of the fifty states concerning deceptive trade practices conflict. Henry Schein, Inc.,
102 S.W.3d at 695–96. The Texas Supreme Court's reasoning relied on the differences
in the availability of exemplary damages in various states. Id. We note that punitive
damages may not be awarded in an action under the TCPA. Paty v. Herb Adcox Chevrolet
Co., 756 S.W.2d 697, 699 (Tenn. Ct. App. 1988). Even if the Poseys relinquished any right
to exemplary damages, they have not met their burden of showing that the laws of the
forty-four states do not conflict.


 When arguing that the laws of various jurisdictions do not
conflict, the class representatives must present an "extensive analysis of state law
evaluating any differences." Lapray, 135 S.W.3d at 672; see Tracker Marine, L.P. v. Ogle,
108 S.W.3d 349, 359 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The Poseys only
presented the trial court with an analysis of the laws of Texas and Tennessee. The Poseys
were required to present the trial court with an extensive analysis of the laws of all forty-four states and establish that there are no conflicts of law. Since the Poseys did not
present an "extensive analysis of state law evaluating any differences," the Poseys did not
meet their burden of proving that the laws do not conflict.
          If the laws differ, the next step in deciding choice of law is which state has the "most
significant relationship." Choice of law in tort cases is determined by applying the "most
significant relationship" analysis. For misrepresentations, the "most significant relationship"
test involves three levels. 
          The first level involves the general test, which weighs the competing policy interests
of the different jurisdictions. Section 6 of the Restatement provides that the factors which
courts should consider include the following: 
(a)the needs of the interstate and international systems, 
 
(b)the relevant policies of the forum, 
 
(c)the relevant policies of other interested states and the relative
interests of those states in the determination of the particular issue, 
 
(d)the protection of justified expectations, 
 
(e)the basic policies underlying the particular field of law, 
 
(f)certainty, predictability, and uniformity of result, and 
 
(g)ease in the determination and application of the law to be applied. 

Restatement (Second) of Conflicts § 6(2) (1971); see Gutierrez, 583 S.W.2d at 318–19. 
In the context of tort cases, the factors of the justified expectations of the parties and of
certainty, predictability, and uniformity of result are of lesser importance. Restatement
(Second) of Conflicts § 148(2) cmt. b (1971). 
          The second level of analysis provides additional guidance concerning a specific
area of law, which in this case is torts. While Section 6 "sets out the general principles by
which the more specific rules are to be applied," Section 145 lists additional factors
applicable to a tort case. Gutierrez, 583 S.W.2d at 318–19. The factors enumerated by
Section 145 include: 
(a)the place where the injury occurred, 
 
(b)the place where the conduct causing the injury occurred, 
 
(c)the domicil, residence, nationality, place of incorporation and place of
business of the parties, and 
 
(d)the place where the relationship, if any, between the parties is
centered.

Restatement (Second) of Conflicts § 145(2); see Gutierrez, 583 S.W.2d at 319. 

          The third level of guiding principles applies to a specific context within the area of
law. For misrepresentation, the applicable specific context is found in Section 148 of the
Second Restatement. Lutheran Bhd. v. Kidder Peabody & Co., 829 S.W.2d 300, 310 (Tex.
App.—Texarkana), remanded w.r.m., 840 S.W.2d 384 (Tex. 1992); see Restatement
(Second) of Conflicts § 148 (1971). If the representations were made and received in
the same state and the plaintiff's reliance occurred in that state as well, Section 148(1)
creates a presumption for the application of the state's law where the representations were
made and received. Section 148(1) provides as follows:
When the plaintiff has suffered pecuniary harm on account of his reliance on
the defendant's false representations and when the plaintiff's action in
reliance took place in the state where the false representations were made
and received, the local law of this state determines the rights and liabilities
of the parties, unless, with respect to the particular issue, some other state
has a more significant relationship under the principles stated in § 6 to the
occurrence and the parties, in which event the local law of the other state will
be applied.

Restatement (Second) of Conflicts § 148(1). This presumption can be rebutted if
another state has more significant contacts under the Section 6 analysis. Id. However,
Vanderbilt made the alleged misrepresentations in Tennessee and the majority of the
plaintiffs received the alleged misrepresentations in a different state. Thus, the
presumption of Section 148(1) does not apply. The Second Restatement provides
additional factors to be considered in determining the state with the "most significant
contacts" as follows: 
(a)the place, or places, where the plaintiff acted in reliance upon the
defendant's representations, 
 
(b)the place where the plaintiff received the representations, 
 
(c)the place where the defendant made the representations, 
 
(d)the domicil, residence, nationality, place of incorporation and place of
business of the parties, 
 
(e)the place where a tangible thing which is the subject of the transaction
between the parties was situated at the time, and 
 
(f)the place where the plaintiff is to render performance under a contract
which he has been induced to enter by the false representations of
the defendant.

Restatement (Second) of Conflicts § 148(2). The comments to Section 148(2) provide
that, when any two of the factors above, except domicile and state of incorporation or place
of business, are located within the same state, that state will usually have the most
significant contacts. Comment j to Section 148 states in its entirety:
No definite rules as to the selection of the applicable law can be stated,
except in the situation covered by Subsection (1). If any two of the above-mentioned contacts, apart from the defendant's domicil, state of
incorporation or place of business, are located wholly in a single state, this
will usually be the state of the applicable law with respect to most issues. So
when the plaintiff acted in reliance upon the defendant's representations in
a single state, this state will usually be the state of the applicable law, with
respect to most issues, if (a) the defendant's misrepresentations were
received by the plaintiff in this state, or (b) this state is the state of the
plaintiff's domicil or principal place of business, or (c) this state is the situs
of the land which constituted the subject of the transaction between the
plaintiff and the defendant, or (d) this state is the place where the plaintiff
was to render at least the great bulk of his performance under his contract
with the defendant. The same would be true if any two of the other contacts
mentioned immediately above were located in the state in question even
though this state was not the place where the plaintiff received the
representations.

Restatement (Second) of Conflicts § 148 cmt. j (1971). As the comment makes clear,
there are no definite rules, apart from the presumption contained in Subsection (1). 
          Because the Restatement instructs us that "[n]o definite rules as to the selection of
the applicable law can be stated," the commentary does not create a presumption similar
to Section 148(1). Further, Section 148 must be analyzed in conjunction with Section 145
and Section 6. Courts should review the respective state contacts qualitatively rather than
quantitatively. Minn. Mining & Mfg. Co., 955 S.W.2d at 856; see Duncan, 665 S.W.2d at
421. The only two jurisdictions that the record indicates the trial court considered are
Texas and Tennessee. Without being presented with an analysis of the Second
Restatement factors of the other forty-two states, the Poseys did not meet their burden of
providing a choice of law analysis on which the trial court could determine if Tennessee
has the "most significant" contacts of all of the forty-four states.
          In the third step of our choice of law analysis, we must determine if any exceptions
apply which prevent the application of the law of the state with the "most significant
contacts." The Poseys argue that Tennessee law applies due to the Full Faith and Credit
Clause of the United States Constitution and because Tennessee law does not conflict with
Texas public policy.
          The Poseys argue that, because the TCPA is not against Texas public policy, there
is no reason not to apply the TCPA. Under the "public policy doctrine," Texas will not
enforce a foreign law which is contrary to Texas public policy. If the law of the foreign
jurisdiction with the most significant contacts is against "good morals or natural justice," or
is "prejudicial to the general interests of our citizens," Texas courts should refuse to
enforce said law. Larchmont Farms, Inc. v. Parra, 941 S.W.2d 93, 95 (Tex. 1997); Copus,
309 S.W.2d at 232; Seth v. Seth, 694 S.W.2d 459, 463 (Tex. App.—Fort Worth 1985, no
writ); see DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 679–81 (Tex. 1990). However,
mere differences between Texas law and foreign law does not render the foreign law so
contrary to Texas public policy that it should not be enforced. Robertson, 609 S.W.2d at
536–37; Gutierrez, 583 S.W.2d at 322; see Castilleja v. Camero, 414 S.W.2d 424, 427
(Tex. 1967). The Poseys argue that, because the TCPA is not contrary to good morals and
natural justice, Texas must apply the TCPA. This argument fails because the policy of not
enforcing a law which is contrary to Texas public policy is an exception to the Texas choice
of law rules, not the rule itself. The fact that the Tennesee law is not contrary to the
morals, natural justice, and policy of Texas does not mean that Tennessee law applies.
          In the alternative, the Poseys argue that Tennessee law must be applied under the
Full Faith and Credit Clause. The United States Constitution places some limits on the
application of Texas choice of law rules. The Full Faith and Credit Clause and the Due
Process Clause require the application of the law of a state which has a "significant contact
or significant aggregation of contacts, creating state interests, such that choice of its law
is neither arbitrary nor fundamentally unfair."


 Allstate Ins. Co. v. Hague, 449 U.S. 302,
310–13 (1981); see Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818 (1985); see also
Manning, 914 S.W.2d at 607. The application of Tennessee law is not required by the Full
Faith and Credit Clause because Texas, among other states, also has significant contacts
with the transaction. 
          Last, we reach the remaining arguments presented by the parties. We will first
address Vanderbilt's contention that a nationwide class concerning deceptive trade
practices cannot be certified as a matter of law. We will then address whether the "False
Conflicts" analysis requires application of Tennessee law, as argued by the Poseys.
          Vanderbilt asserts the Texas Supreme Court has held that a nationwide class
concerning deceptive trade practices cannot be certified as a matter of law. A nationwide
state law class action can be theoretically certified in two ways. Either the law of a single
state must apply to all of the plaintiffs' claims or the laws of the various states must be
sufficiently similar that common issues of law predominate. Rory Ryan, Comment,
Uncertifiable?: The Current Status of Nationwide State-Law Class Actions, 54 Baylor L.
Rev. 467, 468–71 & n.6 (Spring 2002). Vanderbilt's argument is incorrect because it
ignores the possibility that a nationwide class can be certified if the laws of a single state
apply. The Texas Supreme Court has noted that the overwhelming majority of both state
and federal courts have rejected certification of nationwide classes when the class must
apply multiple states' laws. Henry Schein, Inc., 102 S.W.3d at 698–99; see Tracker
Marine, L.P., 108 S.W.3d at 359; see also Rory Ryan, supra. In Henry Schein, Inc., the
Texas Supreme Court held that differences in the availability of exemplary damages in
various states prevented the application of one state's law concerning deceptive trade
practices. Henry Schein, Inc., 102 S.W.3d at 695–96; see Tracker Marine, L.P., 108
S.W.3d at 352–54. Since the laws conflict, the Texas Supreme Court held that a
nationwide class could not be certified. Henry Schein, Inc., 102 S.W.3d at 695–96. 
However, Henry Schein, Inc. only addressed the argument that a single state's law could
apply because the laws of the various jurisdictions did not conflict. Id. All of the cases
cited by Vanderbilt concern the situation where the class proponents are contending that
the laws of the various states do not conflict and thus a single state's law can be applied.


 
However, Vanderbilt's argument ignores the second method by which a nationwide class
can be certified—when the law of one state applies to all of the transactions. If a single
state has the "most significant" contacts to all of the transactions involving deceptive trade
practices, a nationwide class can be certified. Grant Thornton, LLP v. Suntrust Bank, 133
S.W.3d 342, 361 (Tex. App.—Dallas 2004, pet. filed); Nat'l W. Life Ins. Co. v. Rowe, 86
S.W.3d 285, 301 (Tex. App.—Austin 2002, pet. filed).
          In order for a class to be certified because only one state's law applies, a single
state must have the most significant contacts for all of the transactions. Choice of law
must be determined for each individual transaction. If the same state has the most
significant contacts for all of the transactions, the class can be certified. This will be a rare
circumstance. In most cases involving deceptive trade practices, analysis under the
Second Restatement will result in many states that have the most significant contacts to
the various transactions. The Fourteenth Court of Appeals decision in Tracker Marine
illustrates the more common situation. Tracker Marine involved a class certified for
misrepresentations made in the sale of boats. The company that manufactured the boats
was domiciled in Missouri. Tracker Marine, L.P., 108 S.W.3d at 356. The court held that
the Second Restatement "suggest[s] an analysis that points well away from Missouri." Id. 
Thus, there were many states that had the "most significant" contacts to the various
transactions of the class, which prevented the class from being manageable. Id. at
359–63. However, if the Second Restatement indicates that a single state has the "most
significant" contacts to all of the transactions, a nationwide class could be certified.
          The Poseys contend there is no conflict between the laws of Tennessee and Texas
because all of Texas' interests are protected under Tennessee law. The Poseys' argument
is essentially a "False Conflicts" analysis. At least one Texas court has held that no choice
of law analysis is required when the conflict is a "false conflict." See Aguiniga, 9 S.W.3d
at 261. 
          The "False Conflicts" analysis was developed by Brainerd Currie,


 who believed that
the process of choosing the governing law ought to be analyzed according to the purposes
behind that law. James P. George, False Conflicts and Faulty Analyses: Judicial Misuse
of Governmental Interests in the Second Restatement of Conflicts of Laws, 23 Rev. of
Litig. 489, 511 (Summer 2004). Under the "False Conflicts" approach, a false conflict
occurs when only one state has a true interest in the dispute. Id. at 493. The drafters of
the Second Restatement combined aspects of several choice of law methodologies in
drafting the Second Restatement. Id. at 519. While the "False Conflicts" doctrine has
important influence in the governmental policy analysis contained in the Second
Restatement, we do not believe it should be used to determine whether a conflict exists. 
If the "False Conflicts" doctrine is used to determine whether a conflict exists, it may very
well supplant the Second Restatement as the test to determine the conflicts of law. We
note that the governmental interest factor is an important component of the test in the
Second Restatement, but it must be considered in connection with the other factors
contained in the Restatement. As suggested by the Texas Supreme Court, a conflict exists
when there is a difference between the laws of the relevant jurisdictions. See Duncan, 665
S.W.2d at 419–21. Further, even if the "False Conflicts" doctrine applies, the Poseys have
not shown that only Tennessee has an interest in the litigation. While the Poseys
presented the trial court with the interests of Texas and Tennessee, they failed to present
the trial court with any of the interests of the other forty-two states. The Poseys must show
there is no conflict of interest between all forty-four states, even if the "False Conflicts"
analysis applied under Texas choice of law rules.
          In summary, a nationwide class can be certified if a single state has the most
significant relationship to all of the transactions. Although the Second Restatement is
influenced by the "False Conflicts" analysis, the Second Restatement, rather than the
"False Conflicts," is the standard for choice of law in Texas. The trial court's conclusion
that Tennessee had the most significant contacts requires a more extensive examination
of the governmental interests of the forty-four states.


 The Full Faith and Credit Clause
does not require the application of Tennessee law. Last, the fact that Tennessee law is
not contrary to Texas public policy does not require the application of Tennessee law. 
Common Issues of Fact
          The second principal issue in our analysis is whether the trial court erred in
concluding there are common issues of fact. Vanderbilt argues that the trial court's
certification violates the requirements of commonality, typicality, superiority, and adequate
representation; that the common issues do not predominate; that the Poseys' allegations
are not sufficient to allege a cause of action under the TCPA; and that the trial plan is
deficient. We conclude the Poseys have not shown there are common issues. Since the
failure to prove commonality is dispositive, we decline to determine the remainder of
Vanderbilt's complaints.
          The Texas Supreme Court has noted that the threshold of commonality is not high. 
Union Pac. Res. Group, Inc., 111 S.W.3d 69, 74 (Tex. 2003); see Phillips Petroleum Co.
v. Bowden, 108 S.W.3d 385, 394 (Tex. App.—Houston [14th Dist.] 2003, pet. filed). 
Commonality does not require that "all or even a substantial portion of the legal and factual
questions be common to the class." Nissan Motor Co. v. Fry, 27 S.W.3d 573, 588 (Tex.
App.—Corpus Christi 2000, pet. denied). Class certification requires at least one issue of
law or fact "that inheres in the complaints of all class members." Hankins, 111 S.W.3d at
74 (quoting Bowden, 108 S.W.3d at 394). A common question exists when the answer as
to one class member is the same as to all. Spera v. Fleming, Hovenkamp & Grayson,
P.C., 4 S.W.3d 805, 810 (Tex. App.—Houston [14th Dist.] 1999, no pet.); Sun Coast Res.,
Inc. v. Cooper, 967 S.W.2d 525, 532 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd
w.o.j.). The common issue must be "applicable to the class as a whole" and must be
"subject to generalized proof." Hankins, 111 S.W.3d at 74 (quoting Nichols v. Mobile Bd.
of Realtors, Inc., 675 F.2d 671, 676 (5th Cir. 1982)). This Court has held that a single
common question can be sufficient to show commonality. Manning, 914 S.W.2d at 611;
Bailey, 83 S.W.3d at 853. 
          The Texas Supreme Court has held that "actual, not presumed, conformance with
[Rule 42] remains . . . indispensable." Bernal, 22 S.W.3d at 435 (quoting Gen. Tel. Co. v.
Falcon, 457 U.S. 147, 160 (1982)). A trial court cannot rely on the mere assurances of
counsel that any problems with predominance or superiority can be overcome. Bernal, 22
S.W.3d at 435. "Compliance with Rule 42 must be demonstrated; it cannot merely be
presumed." Henry Schein, Inc., 102 S.W.3d at 691. A party must do more than merely
allege that the action meets the requirements of certification; a party must produce at least
some evidence supporting certification. Lebron v. Citicorp Vendor Fin., Inc., 99 S.W.3d
676, 679 (Tex. App.—Eastland 2003, no pet.) (certification improper in the absence of any
evidence supporting certification). Although the class proponent is not required to make
a prima facie case or make an extensive evidentiary showing, they must do more than
"merely allege that the requirements have been met and must at least show some facts to
support certification." Spera, 4 S.W.3d at 810; see Lebron, 99 S.W.3d at 679;
Graebel/Houston Movers, Inc. v. Chastain, 26 S.W.3d 24, 29 (Tex. App.—Houston [1st
Dist.] 2000, pet. dism'd w.o.j.). 
          The Poseys have not shown that a single common issue of law or fact exists. As
discussed above, the trial court erred in concluding the law of Tennessee applies in the
absence of a more extensive analysis. Therefore, the Poseys have not shown that there
are common issues of law. See Fry, 27 S.W.3d at 588 (because not all class members
could pursue the common issues of law, commonality was lacking). In addition, the
Poseys have not shown that there are common issues of fact. The Poseys introduced
evidence of the number of variable rate mortgages and the breakdown of the interest rates
as specified in Vanderbilt's prospectus filed with the SEC. In their motion for certification
of a class, the Poseys specified fifteen issues which they alleged were common issues. 
However, all of these alleged common issues required Vanderbilt to have made a
misrepresentation to the various members of the class. The trial court was not presented
with any evidence that any members of the class received misrepresentations other than
the Poseys. The only evidence of misrepresentations was the letters received by the
Poseys. Because of the vast number of mortgages managed by Vanderbilt and the fact
the letter is clearly a form letter, the Poseys contend the trial court did not abuse its
discretion by inferring that the letters were computer-generated and that the unnamed
class members received misrepresentations. Compliance with the certification
requirements must be actual, not presumed. Bernal, 22 S.W.3d at 435. Because the
Poseys did not present the trial court with any evidence that similar misrepresentations
were made to other members of the class, they have not shown that there are common
issues. Without some evidence of misrepresentations made to other members of the
class, the Poseys have not met their burden. Although the letter is clearly a form letter, the
conclusion that the misrepresentations were made to a class requires the court to presume
the fact to be proved—that a class received misrepresentations. Since the Poseys have
failed to prove there is at least one common issue of law or fact, they have failed to meet
the requirement of commonality.
          The parties are entitled to some discovery before the certification hearing. We note
that courts often limit discovery pending class determination, but litigants will generally
need some discovery to effectively support or oppose a class-certification motion. In re
Alford Chevrolet-Geo, 997 S.W.2d 173, 181 (Tex. 1999). The parties are not limited to
admissible or formal evidence at a certification hearing. St. Louis Southwestern Ry. Co.
v. Voluntary Purchasing Groups, Inc., 929 S.W.2d 25, 30 (Tex. App.—Texarkana 1996,
no writ). Although the certification in some classes can be made on the basis of the
pleadings, in many cases discovery must be conducted to establish commonality of issues,
typicality of claims, or predominance. Alford Chevrolet-Geo, 997 S.W.2d at 182. "Such
discovery will frequently be enmeshed with the merits." Id. Generally, the quantity of
discovery that is warranted to determine any certification questions is within the trial court's
discretion. Id. Factors which the trial court should consider in determining the scope of
precertification discovery include the "importance, benefit, burden, expense, and time
needed to produce the proposed discovery." Id. "Other factors include whether the
individual claims are large enough to be worth pursuing if the class is not certified, and if
so, whether the proposed discovery would relate to those individual claims." Id. 
          At oral argument, the Poseys argued that certification cannot inquire into the merits
because a class cannot be defined on the basis of liability. The Poseys argue that an
inquiry into the merits would create a prohibited fail-safe class. A class must be precisely
defined by reference to objective criteria. Beeson, 22 S.W.3d at 403; see Chastain, 26
S.W.3d at 29–30. The class should not be defined by criteria that require an evaluation
of the merits of the case. Beeson, 22 S.W.3d at 404. "By evaluating the merits at the
certification stage, the trial court would allow a representative plaintiff to secure the benefits
of proceeding with a class-action suit without first satisfying the requirements for
maintaining one." Id. A "fail-safe" class is a class whose definition is "based on resolving
the ultimate liability issue" and the class members are "bound only by a judgment favorable
to plaintiffs but not by a judgment favorable to defendants." Id. at 404–05. The trial court
defined the class as follows:
Those persons to whom Vanderbilt Mortgage & Finance, Incorporated, sent
a letter since March 25, 2001, stating, among other things, the interest rate
and the payment that was due after an adjustment in the interest rate was
called for by their installment sales contract.

This definition does not create a prohibited fail-safe class. The class is defined by
objective criteria which is not based on resolving an ultimate issue. The class will remain
the same regardless of whether the ultimate determination results in a conclusion that the
letters contained misrepresentations. Although a class definition should not depend on an
evaluation of the merits, the trial court should consider the merits in evaluating whether the
class certification requirements of commonality, typicality, superiority, and predominance
have been met. See Hankins, 111 S.W.3d at 72–73. 
          In the past, this Court has held that class certification should be decided with little
or no attention to the merits. See Manning, 914 S.W.2d at 607. In Hankins, the Texas
Supreme Court rejected this view and held that an analysis of the merits of claims or
defenses is relevant in certifying a class. The court noted that "such issues as
commonality, typicality, superiority, and predominance are at least tangentially related to
the merits." Hankins, 111 S.W.3d at 72 (quoting Alford Chevrolet-Geo, 997 S.W.2d at
182). The trial court may look beyond the pleadings in determining whether the
certification requirements have been met. Beeson, 22 S.W.3d at 404. While the trial
court's analysis should be "far less searching" than a trial on the merits, the trial court
should consider merits in evaluating whether the class certification requirements of
commonality, typicality, superiority, and predominance have been met. Hankins, 111
S.W.3d at 72–73. In reviewing the certification of a class, we must be certain "the trial
court did not simply 'certify first' without engaging in a serious analysis of the action and
the apparent propriety of certifying the class." Alford Chevrolet-Geo, 91 S.W.3d at 406. 
          A trial court abuses its discretion if it certifies a class based on mere speculation. 
Remington Arms Co. v. Luna, 966 S.W.2d 641, 644 (Tex. App.—San Antonio 1998, pet.
denied). Because the trial court's decision required it to presume that the other members
of the class received misrepresentations, it abused its discretion in certifying the class. 
Because we have determined that the requirement of commonality has not been met, we
decline to determine Vanderbilt's remaining arguments.
Availability of Injunctive Relief and Certification Under Rule 42(b)(2)
          The Poseys complain on their cross-appeal the trial court erred in refusing to certify
a class under Rule 42(b)(2). They argue the trial court erred by reading into the
Tennessee statute conditions that were not part of the statute, by refusing to implement
the scheme of remedies available under the TCPA, and by ruling on the merits of the case. 
We conclude the trial court did not abuse its discretion in refusing to certify the class
because the Poseys failed to show commonality. 
          The TCPA provides that any practice prohibited by the TCPA can be enjoined. The
statute provides that "[w]ithout regard to any other remedy or relief to which a person is
entitled, anyone affected by a violation of this part may bring an action . . . to enjoin the
person who has violated . . . this part; . . . ." Tenn. Code Ann. § 47-18-109(b). The
remedies afforded by the TCPA are cumulative, and a consumer is not required to choose
among them. Tenn. Code Ann. § 47-18-112. 
          A Rule 42(b)(2) class is intended to provide injunctive or declaratory relief for the
class. Rule 42(b)(2) provides that:
An action may be maintained as a class action if the prerequisites of
subdivision (a) are satisfied, and in addition:

                     . . . .
 
(2) the party opposing the class has acted or refused to act on
grounds generally applicable to the class, thereby making appropriate
final injunctive relief or corresponding declaratory relief with respect
to the class as a whole.

Tex. R. Civ. P. 42(b)(2). The Texas rule was derived from the Federal Rules of Civil
Procedure, Rule 23(b)(2), and reads identically. Lapray, 135 S.W.3d at 664. "Subdivision
(b)(2) was added to [the federal rules] in 1966 primarily to facilitate the bringing of class
actions in the civil rights area." Id. at 663–71 (quoting Kincade v. Gen. Tire & Rubber Co.,
635 F.2d 501, 506 n.6 (5th Cir. 1981)). 
          As discussed above, the Poseys failed to meet the commonality requirement. A
Rule 42(b)(2) class must meet the requirements of Rule 42(a) and the requirement of
"cohesiveness." Lapray, 135 S.W.3d at 671. Since the failure to show commonality is
dispositive, we decline to address the remainder of the arguments concerning the Rule
42(b)(2) class.
Conclusion
          Because the Poseys failed to show there were common issues of fact and failed to
present the trial court with an extensive choice of law analysis, the trial court abused its
discretion in certifying the class under Rule 42(b)(4). The trial court did not abuse its
discretion in refusing to certify a class under Rule 42(b)(2). We affirm the refusal to certify
a class under Rule 42(b)(2), reverse the certification of the class under Rule 42(b)(4), and
remand this case to the trial court for further proceedings consistent with this opinion. 
 
                                                                           Jack Carter
                                                                           Justice

Date Submitted:      July 28, 2004
Date Decided:         September 9, 2004