MINNESOTA MINING AND MANUFAC-
TURING COMPANY, Petitioner,

v.

NISHIKA LTD., Lentec Corporation,
American 3D Ltd., and Nishika Manu-
facturing (H.K.) Ltd., Respondents.

No. 94–1124.

Supreme Court of Texas.

Argued March 19, 1996.

Decided Dec. 13, 1996.

Jo Ben Whittenburg, Beaumont, Harry M.
Reasoner, Page I. Austin, Marie R. Yeates,
Margaret C. Ling, Houston, Robbi B. Hull,
Austin, Thomas Alexander, Houston, Gilbert
I. Low, Beaumont, Carl A. Parker, Port Ar-
thur, Russell J. Weintraub, Austin, Penelope
E. Nicholson, Richard L. Flowers, Jr., Hous-
ton, for Petitioner.

Mary Kathryn Sammons, Randall W. Wil-
son, Houston, Walter Umphrey, Beaumont,
Stephen D. Susman, Dallas, Thomas A.
Thomas, Beaumont, James B. Sales, Roger
Townsend, Houston, Jennifer Bruch Hogan,
Houston, William Hawkland, Baton Rouge,
LA, Richard Speidel, Chicago, IL, William
Powers, Jr., Austin, for Respondents.

CERTIFICATE FROM THE SUPREME
COURT OF TEXAS TO THE SU-
PREME COURT OF MINNESOTA
PURSUANT TO MINN. STAT. ANN.
§ 480.061

TO THE SUPREME COURT OF MINNE-
SOTA AND THE HONORABLE JUS-
TICES THEREOF:

## I. PRELIMINARY STATEMENT

This breach of warranty case involves a
claim by four separate but related corpora-
tions to recover lost profits as a single eco-
nomic unit. The corporations allege that a
manufacturer's defective product injured
each of them by destroying consumer confi-
dence in the three-dimensional photography
industry in which they were each partici-
pants in different roles. Based on favorable
jury findings, the trial court rendered judg-
ment allowing all plaintiffs to recover their
combined lost profits as a result of the manu-
facturer's breach of express and implied war-
ranties. The court of appeals reformed the
judgment with respect to pre- and post-judg-
ment interest, but affirmed in all other re-
spects. *Minnesota Mining & Mfg. Co. v.
Nishika Ltd.*, 885 S.W.2d 603 (Tex.App.—
Beaumont 1994, writ granted). We agree
with the court of appeals that Minnesota law
applies to this case. However, because the
case turns on a novel issue of Minnesota law,
we certify questions on our own motion to
the Supreme Court of Minnesota before pro-
ceeding further.[1]

## II. STATEMENT OF THE CASE

### A

We summarize the facts in the light most
favorable to the jury's verdict. In 1988,

1. In 1973, the Minnesota Legislature passed the Uniform Certification of Questions of Law Act. *See* MINN.STAT.ANN. § 480.061 (1990). Subdivision 1 of the Act states:

   The [Minnesota] supreme court may answer questions of law certified to it by the ... highest appellate court or the intermediate appellate court of any other state, when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state. *Id.* This legislation empowers the Supreme Court of Minnesota to decide unsettled questions of state law, if it chooses to do so, once an express certification procedure is followed by a qualified court.

James Bainbridge met with Minnesota Mining and Manufacturing Company (3M) officials at 3M's headquarters in St. Paul, Minnesota. Bainbridge sought 3M's assistance with a film development process to be used in a three-dimensional (3-D) photography system he planned to manufacture, market, and service through several independent corporations. At this meeting, Bainbridge informed 3M of his plans to invest millions of dollars in this venture. Bainbridge also informed 3M that the venture could not succeed without an effective film development process. By mid–1989, 3M had formulated a new, light-sensitive emulsion that it claimed would work well with the system Bainbridge had in mind. The parties understood that the emulsion would be used in combination with a special backcoat sauce 3M formulated to develop the 3-D photographs.

Along with fellow entrepreneur Daniel Fingarette, Bainbridge established an elaborate plan for managing the 3-D photography system at every stage. Fingarette owned 100 percent of the camera manufacturer, Quantronics Manufacturing (H.K.) Limited. Bainbridge owned 100 percent of three other corporations: the camera distributor, American 3D (H.K.) Limited, the printer designer, LenTec Corporation, and the printer, Nishika Limited. All told, these four corporations invested about $40 million in the system. More than $1 million of that investment involved Nishika Limited's purchase of the backcoat sauce and LenTec's purchase of the new emulsion from 3M. 3M manufactured a component of the backcoat sauce in Minnesota and shipped the component to Nishika Limited in Nevada, where it was mixed with other materials to complete the product. 3M sold the special emulsion, which it manufactured in Italy, to LenTec in Georgia. In turn, LenTec sold the emulsion to Nishika Limited, which mixed the emulsion with the completed backcoat sauce in Nevada to process the photographs.

By 1989, American 3D had sold more than 100,000 cameras, and public interest in 3-D photography was on the rise. Before the end of that year, however, significant problems became apparent with the film development process 3M had designed. The photographs faded badly a short time after processing, and many customers complained to Bainbridge about their poor quality. Unaware of the cause, Nishika Limited reprinted the photographs, but the reprints also faded. When Bainbridge confronted 3M about the problem, 3M assured him it would stand behind its products and find a solution. By early 1990, however, American 3D had suffered a significant downturn in sales, and the future of all the interrelated businesses had come into doubt.

Joined by certain individual distributors, American 3D, LenTec, Nishika Limited, and Nishika Manufacturing (H.K.) Limited[2] (collectively "the Nishika Plaintiffs") sued 3M in Jefferson County, Texas, alleging breach of express and implied warranties. The Nishika Plaintiffs contended that the new emulsion 3M developed specifically for their venture was incompatible with the backcoat sauce and that this defect caused the fading. The Nishika Plaintiffs further asserted that 3M's defective goods caused the public to lose confidence in their products and processing system, ultimately leading to the destruction of their business venture. The four independent companies sought lost profits as a single economic enterprise, even though 3M never dealt directly with or sold any products to either American 3D or Nishika Manufacturing.

Immediately before trial, the Nishika Plaintiffs filed a brief contending that Minnesota law should govern this case. The trial judge heard the parties' arguments at a pretrial hearing, but deferred ruling on the choice-of-law issue until several weeks after the trial began. The trial court ultimately agreed with the Nishika Plaintiffs that Minnesota had the most significant relation-

**2.** Nishika Manufacturing took over as camera manufacturer from Quantronics sometime before the plaintiffs filed suit. Among other arguments, 3M asserts that Nishika Manufacturing cannot recover as a matter of law for breach of warranty because Nishika Manufacturing was not yet formed when 3M sold its products to American 3D and LenTec. In response, the Nishika Plaintiffs contend that Quantronics assigned any claim it had against 3M to Nishika Manufacturing or, alternatively, that Nishika Manufacturing had a claim of its own against 3M.

ship to the transaction. The jury found that 3M breached express and implied warranties and that 3M's breach directly caused the harm suffered by each of the Nishika Plaintiffs.[3] The trial court submitted the following damages question to the jury:

### QUESTION NO. 13

What sum of money, if any, would fairly and reasonably compensate the plaintiffs for damages, if any, suffered as a direct and natural result of 3M's breach of warranty, if any? Answer in dollars and cents for each plaintiff, if any, and without any reduction for any percentage of fault or causation you might attribute to such plaintiff.

ANSWER:

Nishika/LenTec    $_____

[individual plaintiffs listed]

Elsewhere in the charge, the trial court instructed the jury that "the term 'Nishika/LenTec' as used in this Charge, [means] Nishika Ltd., LenTec Corp., American 3D Ltd., and Nishika Manufacturing (H.K.) Ltd." 3M made the following objection to the submission of this question:

> [D]efendant objects to Question No. 13, which ... group[s] Nishika/LenTec as one of the plaintiffs in the damage question. In this respect, Defendant objects since there is evidence that some of the Nishika/LenTec plaintiffs may be entitled to recover on some theories and under some causes of action, whereas others cannot. And the submission as phrased will make it impossible for this Court to know which of the Nishika/LenTec plaintiffs the jury awarded damages to. And since there ... are some of the Nishika/LenTec plaintiffs that there is no evidence that they could recover the damages alleged by the plaintiffs, the question is improper as phrased and should be broken out as to each of the Nishika/LenTec plaintiffs.

The trial court overruled 3M's objection. Based on favorable jury findings, the trial court rendered judgment that the Nishika Plaintiffs recover $29,873,599 plus pre- and post-judgment interest from 3M.[4]

At the court of appeals, 3M complained of the trial court's ruling on choice of law, its submission of the Nishika Plaintiffs as one economic unit in the jury charge, several evidentiary rulings, a supplemental jury instruction, and the award of interest on the judgment. The court of appeals examined each of 3M's contentions, but found reversible error only in the trial court's application of Minnesota law concerning pre-judgment interest. 885 S.W.2d at 633. After reforming the trial court's judgment solely with respect to interest, the court of appeals affirmed.

### B

In a 1966 amendment, the drafters of the Uniform Commercial Code promulgated the current version of section 2–318, which governs express and implied warranties as they apply to parties not in privity with the seller. The amendment provides three alternative versions, which read as follows:

#### Alternative A

A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

#### Alternative B

A seller's warranty whether express or implied extends to any natural person who may reasonably be expected to use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

#### Alternative C

---

3. Nishika Manufacturing was included in the charge, but Quantronics was not.

4. The jury found that the individual distributors, one a resident of Jefferson County, Texas, one a resident of Brazoria County, Texas, and two from Minnesota, incurred no damages. They have not joined in either the appeal to the court of appeals or to this Court.

A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section with respect to injury to the person of an individual to whom the warranty extends.

U.C.C. § 2–318 (1989). The American Law Institute adopted the alternative versions to discourage "proliferation of separate variations in state after state." *Id.* permanent editorial board note. With one change, Minnesota has adopted Alternative C.[5] *See* MINN.STAT.ANN. § 336.2–318 (Supp.1996).

Generally, the issue of which state's law applies is a question of law we resolve by reviewing the record de novo. *See Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984). This Court looks to the principles enunciated in the *Restatement (Second) of Conflict of Laws* (1971) to decide which state's law should govern contractual rights and obligations. *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991). When the contract does not stipulate the law to be applied in the event of a dispute, the general rule of section 188 of the *Restatement* controls our analysis. *See id.*; *see also DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677–78 (Tex.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991). Under that rule, "[t]he rights and duties of the parties with respect to an issue

in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." [6] RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188(1) (1971). We evaluate state contacts not by their number, but by their quality. *Duncan*, 665 S.W.2d at 421; *see Gutierrez v. Collins*, 583 S.W.2d 312, 319 (Tex.1979).

The present case involves contacts in at least seven jurisdictions: Minnesota, Nevada, Oklahoma, Georgia, Pennsylvania, Texas, and Italy. 3M is domiciled in Minnesota and has its principal place of business there. Two of the plaintiffs, Nishika Limited and American 3D, are Nevada corporations. We have examined the complicated facts of this case in light of the "most significant relationship" test applicable to choice-of-law cases. For reasons we will explain fully in our final opinion in this case, we conclude that Minnesota has the most significant relationship to the transaction between the Nishika Plaintiffs and 3M. Therefore, Minnesota law applies.

### C

As previously noted, Minnesota has adopted a version of Uniform Commercial Code section 2–318, codified at section 336.2–318 of the Minnesota Statutes, which mirrors for the most part the language of Alternative C. The statute reads:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

  (a) the needs of the interstate and international systems,

  (b) the relevant policies of the forum,

  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

  (d) the protection of justified expectations,

  (e) the basic policies underlying the particular field of law,

  (f) certainty, predictability and uniformity of result, and

  (g) ease in the determination and application of the law to be applied.

*Id.* § 6.

---

**5.** Minnesota deleted the phrase "with respect to injury to the person of an individual to whom the warranty extends" from the end of the official text of Alternative C. *See* MINN.STAT.ANN. § 336.2–318 (Supp.1996).

**6.** "In the absence of an effective choice of law by the parties ..., the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

  (a) the place of contracting,

  (b) the place of negotiation of the contract,

  (c) the place of performance,

  (d) the location of the subject matter of the contract, and

  (e) the domicil, residence, nationality, place of incorporation and place of business of the parties."

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188(2) (1971). Section 6, entitled "Choice–of–Law Principles," provides:

A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.

MINN.STAT.ANN. § 336.2–318 (Supp.1996). 3M contends that the trial court and court of appeals erred in construing section 336.2–318 to allow Nishika Manufacturing and American 3D, who never dealt with 3M and who were not in the chain of distribution of 3M's products, to recover economic damages—lost profits—absent any other injury.

The jury found that 3M committed an independent breach of warranty with respect to each of the plaintiffs individually. However, the trial court's single submission on damages, Question 13, did not distinguish the amounts the Nishika Plaintiffs should recover individually. Instead, Question 13 asked the jury to find damages for all four Nishika Plaintiffs in one lump sum. 3M argues that the trial court erred by refusing to segregate the damages individually in the charge. 3M's argument concerning Question 13 is predicated primarily upon its contention that, as parties outside the chain of distribution seeking only economic damages, American 3D and Nishika Manufacturing cannot recover from 3M as a matter of law. After examining 3M's argument in light of Minnesota's adaptation of Alternative C, the court of appeals disagreed. The court of appeals read the language of section 336.2–318 literally, opining that in Minnesota, warranties extend to "any person who may be reasonably expected to use or consume *or even to be affected by the goods and who is injured by the breach of the warranty.*" 885 S.W.2d at 625. The court of appeals also interpreted Minnesota case law as making no distinction between "vertical" and "horizontal" privity for purposes of breach of warranty. *See id.* at 625–26.

3M does not contest that the Nishika Plaintiffs presented evidence of damages. The Nishika Plaintiffs' expert testified that the four businesses lost $97 million in profits as a result of 3M's breach of warranty. Faced with this evidence and the plain language of the Minnesota statute, however, we still cannot say whether the court of appeals' decision on this issue was correct. Section 336.2–318 would appear to allow recovery to any plaintiff whose loss was a foreseeable consequence of the defendant's breach of warranty. A number of cases interpreting section 336.2–318 acknowledge the statute's breadth with regard to third-party warranty claims. *See, e.g., Transport Corp. of Am., Inc. v. International Business Machs. Corp.,* 30 F.3d 953, 958 (8th Cir.1994) ("The U.C.C. as adopted in Minnesota has a privity provision that operates to extend all warranties, express or implied, to third parties who may reasonably be expected to use the warranted goods."); *Industrial Graphics, Inc. v. Asahi Corp.,* 485 F.Supp. 793, 800 (D.Minn.1980) ("Under the law of Minnesota, the implied warranty of a seller extends to any person who can reasonably be expected to use or be affected by the goods and is injured by the breach, irrespective of privity of contract."); *Durfee v. Rod Baxter Imports, Inc.,* 262 N.W.2d 349, 357 (Minn.1977) ("If plaintiff had sued Saab–Scania for breach of either express warranty or implied warranty, the absence of privity would not bar the suit despite the language of the pertinent Code sections."); *Church of the Nativity of Our Lord v. WatPro, Inc.,* 474 N.W.2d 605, 609 (Minn.Ct.App.1991) ("The Minnesota legislature abrogated its privity requirement in 1969. Under the new provision, a seller's warranty extends to any person who can reasonably be expected to use or to be affected by the goods and who was injured by the breach, irrespective of privity of contract."(citations omitted)), *aff'd,* 491 N.W.2d 1 (Minn. 1992). But despite the consensus that section 336.2–318 is expansive, no Minnesota case squarely decides whether the statute extends warranty protection to a plaintiff outside the chain of distribution of a product who suffered only economic damages.

## III. QUESTIONS CERTIFIED

We have concluded that no controlling precedent exists on an issue of Minnesota law central to the disposition of the case before us. To avoid an incorrect prediction and speculation about the outcome under Minne-

sota law, we certify the following questions to the Supreme Court of Minnesota:

1. For breach of warranty under section 336.2–318 of the Minnesota Statutes, is a seller liable to a person who never acquired any goods from the seller, directly or indirectly, for pure economic damages (e.g., lost profits), unaccompanied by any injury to the person or the person's property?

2. If the answer to Question 1 is "yes," may several such persons, who may or may not be related, and who may or may not include the buyer of the goods, recover damages jointly as a single economic unit?

We disclaim any intention or desire that the Supreme Court of Minnesota confine its reply to the precise form or scope of the questions certified. We retain jurisdiction so that, once a response is received from the Supreme Court of Minnesota, all issues may be disposed of in this appeal.

BY ORDER OF THE SUPREME COURT OF THE STATE OF TEXAS