Opinion issued February 10, 2011.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00653-CV

———————————

Enterprise Products Partners, L.P. and Dixie Pipeline Company, Appellants

V.

Catherine
Mitchell, Individually and as AdministratrIX       
to the Estate of Mattie L. Mitchell, Deceased, and as AdministratRIX to the
Estate of Nacquandrea Mitchell, Deceased, O'Neal Pacley, Linda Mitchell, Johnny
Jones, Carolyn Pacley, Samida Mitchell, Frank Pacley, Jim Pacley, Calvin
Bettis, Lulu Bloxson, Ollie Mae Bonner, Johnny Pacley, James L. Pacley, Sanita
Johnson, Sharon Willis, and Rochelle Nabores, Appellees



 



 

On Appeal from the 55th District Court

Harris County, Texas



Trial Court Case No. 0835840

 



 

OPINION ON REHEARING

          Appellants,
Enterprise Products Partners, L.P. (“Enterprise”) and Dixie Pipeline Company
(“Dixie”), filed a motion for en banc reconsideration of our August 19, 2010
opinion.  We treat the motion for en banc
consideration as a motion for rehearing, grant rehearing, and withdraw our
August 19, 2010 opinion and judgment and issue this opinion and judgment in
their place.  The disposition of the case
remains unchanged.

Enterprise and Dixie challenge the
trial court’s June 29, 2009 interlocutory order ruling that Texas law should
govern the issue of recoverable compensatory damages with regard to all
wrongful death and personal injury claims arising from a pipeline
explosion.  In one issue, Enterprise and
Dixie argue that Mississippi law, rather than Texas law, should govern
recoverable compensatory damages.

          We
affirm.

Background

          On
the morning of November 1, 2007, a liquid propane pipeline operated by Dixie
ruptured in a rural area near Carmichael, Mississippi.  Upon its release into the air, the liquid
propane changed to gas and formed a cloud that rose over a nearby neighborhood
and ignited into a large fireball that could be seen and heard for miles
around.  The resulting fire killed two
people, injured seven others, and resulted in the evacuation of approximately
60 families from their homes.  Four homes
were destroyed, several others were damaged, and more than 70 acres of the
woods and grassland surrounding the site of the explosion were burned.  The National Transportation Safety Board
(NTSB) reported that approximately 10,253 barrels, or 430,000 gallons, of
propane were released.

          Appellees,
Catherine Mitchell, O’Neal Pacley, Linda Mitchell, and Johnny Jones, as
wrongful death beneficiaries of the two decedents, Mattie L. Mitchell and
Nacquandrea Mitchell, along with Catherine Mitchell, Catherine Pacley, and
Samida Mitchell as personal injury claimants and other plaintiffs who suffered property
damage (collectively, plaintiffs) sued Dixie and Enterprise, Dixie’s managing
partner,[1] in Harris County,
Texas.  Dixie and Enterprise moved the
trial court to apply Mississippi law to the issue of the amount of recoverable
compensatory damages, arguing that the Restatement (Second) of Conflicts of
Law’s balancing test favors application of Mississippi’s $1 million cap on
noneconomic damages in civil actions.[2]  Dixie and Enterprise argued that, as the
domiciliary state of the plaintiffs, Mississippi has the greatest interest in
determining the amount of compensation to be awarded to its residents and in
protecting defendants doing business in its state.  The plaintiffs argued that Texas law should
apply because both Enterprise and Dixie have their principal place of business
in Texas, the pipeline was manufactured in Texas, and Enterprise and Dixie
control the pipeline’s multi-state operation from Texas.

The trial court issued an order
ruling that “the issue of recoverable compensatory damages with regard to all
wrongful death and personal injury claims is to be governed by Texas law” and
certifying the order for interlocutory appeal pursuant to Texas Civil Practice
and Remedies Code section 51.014(d).  This
interlocutory appeal was filed.[3]  Neither party disputes the application of
Texas law to the remaining issues.

It is undisputed that Dixie and
Enterprise are both Delaware corporations whose principal place of business is
Houston, Texas.  All of the wrongful
death and personal injury plaintiffs are Mississippi residents and domiciliaries.[4]  It is likewise undisputed that the failed
segment of pipeline was manufactured in 1961 in Texas, that it was subsequently
installed in Mississippi, and that the explosion occurred in the state of
Mississippi.  Furthermore, the portion of
the pipeline that exploded was part of a 1,300 mile pipeline in a 35,000 mile
pipeline system and spanned from Texas through Louisiana, Mississippi, Alabama,
Georgia, South Carolina, and North Carolina.

Decisions about Enterprise and
Dixie’s operations were made in Texas. 
Dixie’s corporate representative indicated that its policies, procedures,
and manuals all come from the Houston, Texas office, that the pressure, flow,
and operation of valves and pumps are monitored and conducted from Houston via
a computer system whose control system is likewise in Houston, and that the
Houston employees are generally responsible for the operation of the
pipeline.  Furthermore, key employees
such as the manager of pipeline integrity, the pipeline integrity engineer for
this particular pipeline, and the pipeline controller responsible for
monitoring this pipeline on the day of the explosion are all located in
Houston, Texas.  None of the pump
stations or other facilities along the pipeline’s route through Mississippi are
manned on a routine basis, although Dixie does have about five employees who
work in Mississippi.

Choice of Law

          Which
state’s law governs an issue is a question of law for the court to decide.  Torrington
Co. v. Stutzman, 46 S.W.3d 829, 848 (Tex. 2000).  Therefore, we review the trial court’s
decision to apply Texas law de novo.  See Minnesota Mining & Mfg. Co. v.
Nishika Ltd., 955 S.W.2d 853, 856 (Tex. 1996).

          We
decide choice of law issues by applying the “most significant relationship”
test found in the Restatement (Second) of Conflict of Laws.  Torrington
Co., 46 S.W.3d at 848; Hughes Wood
Prods., Inc. v. Wagner, 18 S.W.3d 202, 205 (Tex. 2000).  Section 6 of the Restatement sets out general
factors relevant to the choice of law:

(a)   the needs of the interstate
and international systems,

 

(b) the relevant policies of
the forum,

 

(c) the relevant policies of
other interested states and the relative interests of those states in the
determination of the particular issue,

 

(d) the protection of
justified expectations,

 

(e) the basic policies
underlying the particular field of law,

 

(f) certainty,
predictability and uniformity of result, and

 

(g) ease in the
determination and application of the law to be applied.

 

Torrington
Co., 46 S.W.3d at 848 (quoting Restatement
(Second) of Conflict of Laws § 6(2) (1971)); see also Hughes Wood Prods., 18 S.W.3d at 205.

          Section
145 of the Restatement provides specific considerations relevant when applying
the general conflict of laws principles to a tort case:

(a)   the place where the injury
occurred,

 

(b) the place where the
conduct causing the injury occurred,

 

(c) the domicile, residence,
nationality, place of incorporation and place of business of the parties, and

 

(d) the place where the relationship,
if any, between the parties is centered.

 

Torrington
Co., 46 S.W.3d at 848 (citing Restatement
(Second) of Conflict of Laws § 145(2) (1971)); see also Hughes Wood Prods., 18 S.W.3d at 205 & n.1.

          Section
145 also provides, “The rights and liabilities of the parties with respect to
an issue in tort are determined by the local law of the state which, with
respect to that issue, has the most significant relationship to the occurrence
and the parties under the principles stated in [section] 6.”  Restatement
(Second) of Conflict of Laws § 145(1) (1971); see also Hughes Wood Prods., 18 S.W.3d at 205 (quoting section
145(1) of Restatement and holding that court of appeals erred by concluding
that Texas law had most significant relationship to case and thus Texas law
should apply to all issues rather than considering which state had most
significant relationship to exclusive remedy issue, which was specific issue to
be resolved).  The Restatement’s “most
significant relationship test” includes a presumption in favor of applying the
law of the place of the injury.  Section
146, governing personal injuries, and section 175, governing wrongful death,
create a presumption that 

the law of the state where
the injury occurred determines the rights and liabilities of the parties,
unless, with respect to the particular issue, some other state has a more
significant relationship under the principles stated in section 6 to the
occurrence and the parties, in which event the local law of the other state
will be applied.

 

Restatement (Second) of
Conflict of Laws §§ 146, 175.

Using this presumption in favor of
the law of the state where the injury occurred as the starting point for our
analysis, we consider the various factors listed in the Restatement to
determine if Texas has a greater interest in the determination of the
particular issue than Mississippi, the state where the injury occurred.  See id.
§ 175 cmt. d. (also providing that courts should examine “the purpose sought to
be achieved by their relevant local law rules and the particular issue
involved”).  The number of contacts with
a state is not determinative; rather, we evaluate the contacts in light of the
state policies underlying the particular substantive issue.  Torrington
Co., 46 S.W.3d at 848.  

In analyzing choice of law in the
context of compensatory damages, the Texas Supreme Court has stated:

The primary purpose of
awarding compensatory damages in civil actions is not to punish the defendant,
but to fairly compensate the injured plaintiff. 
A state’s compensatory damages law balances the need to compensate the
plaintiff against the goal of protecting resident defendants from undue liability
and excessive litigation.

Considering
the purpose of compensatory damages, contacts such as the site of the injury or
where the tortious behavior occurred, which are important in determining which
state’s laws govern liability, are less important.  Rather, the most important contacts in
determining which state’s law governs compensatory damages will usually be the
“ones with the most direct interest in the plaintiff’s monetary recovery and/or
the most direct in protecting the defendant against financial hardship.”

 

Id. at 848–89
(internal citations omitted).

          In Torrington, the supreme court analyzed
which state’s law should apply to compensatory damages in a helicopter crash
that killed two marines.  Id. at 833.  The marines were North Carolina residents
whose domiciles were in Nebraska and Michigan, and at least two of the
defendant corporations, Bell and Textron, had their principal place of business
in Texas.  Id. at 849.  In holding that
the trial court correctly applied Texas law, the court stated,

We have noted that a
plaintiff’s domiciliary state usually has a strong interest in seeing its
compensatory damages law applied.  But
Texas, as the forum state, also has a significant interest in protecting
resident defendants, such as Bell and Textron. 
And other Restatement factors
weigh in favor of applying Texas law. 
For example, much of the conduct that allegedly caused the injury
occurred in Texas.  The helicopter that
was involved in the crash was manufactured and delivered in Texas, several
communications about the bearing failure . . . were issued
from Texas, and Torrington sent communications about the investigation to Bell
in Texas.  Moreover, Texas is the forum
state and the parties acquiesced to the trial court’s application of Texas law
to the liability issue.  “Ease in the
determination and application of the law to be applied” is one of the factors
to be considered in resolving choice-of-law questions under the Restatement.

 

Id. at 850
(internal citations omitted).

          Here,
Mississippi’s contact with the tort arises from the fact that all of the
wrongful death and personal injury plaintiffs were residents and domiciliaries
of Mississippi at the time of the explosion. 
Mississippi has an interest in ensuring that its citizens receive
adequate compensation so that the costs of injured residents are not borne by
the public, but Mississippi’s damages cap does not further that interest.  Moreover, while the explosion and its
resulting injuries occurred in Mississippi, we note that the pipeline could
have exploded at any point along its 1,300 mile span.  See id.
at 849; Duncan v. Cessna Aircraft Co.,
665 S.W.2d 414, 421 (Tex. 1984) (rejecting using location of incident alone as
method for determining which state’s law should govern).

The policy behind Mississippi’s Tort Reform Act of 2004,
including the compensatory damages cap, was essentially “to end the state’s
‘hell-hole’ reputation and attract more business and insurers to
Mississippi.”  See generally Miss. Code Ann.
§ 11-1-60 (2004) (providing limit of $1 million in awarding non-economic
damages against any civil defendant other than health care liability defendant,
providing limit of $500,000 in awarding non-economic damages in medical
liability actions, and defining noneconomic damages as “subjective,
nonpecuniary damages” arising from an injury); H.B. 13, 2004 Leg., 2d Ex. Sess.
(Miss. 2004) (amending section 11-1-60 and others); Mark Behrens & Cary
Silverman, Now Open for Business: The
Transformation of Mississippi’s Legal Climate, 24 Miss. C. L. Rev. 393, 415–16 (2005) (discussing “comprehensive
civil justice reform bill, H.B. 13” that, among other provisions, amended
section 11-1-60 to limit non-economic damages). 
Those policy concerns are not implicated here.  Mississippi’s interest in applying its
damages cap to lawsuits in that state has little applicability to a lawsuit
brought in a different state against defendants domiciled in that different
state where the tortious conduct also occurred in that other state.  When the incident occurred, Enterprise and
Dixie had only limited business activity in the state of Mississippi, and the
pipeline, which was built through the state of Mississippi in the 1960s, was
not built in reliance on this reform, as the Tort Reform Act was passed in
2004.

Texas, however, is
the forum state with a significant interest in protecting resident defendants,
and the parties have acquiesced to the trial court’s application of Texas law
to all other issues in this case.  Both of the defendants, Enterprise and Dixie,
are corporations with their principal place of business in Texas, and the
decisions regarding maintenance and operation of the pipeline—i.e., the conduct causing the injury—occurred in Texas.  Additionally, Texas’s compensatory damages law is at least equally
capable of serving the interest of fairly compensating injured plaintiffs.  See
Torrington Co., 46 S.W.3d at 848 (holding that “we must evaluate the
contacts in light of the state policies underlying the particular substantive
issue” and that “[t]he primary purpose of awarding compensatory damages in
civil actions is . . . to fairly compensate the injured plaintiff”).  Thus,
here, just as in Torrington, all of
these factors weigh in favor of applying Texas law.  See id.
at 848.

Enterprise and Dixie argue in their
brief that Torrington is
distinguishable from the present case because Torrington involved “the unique setting of an aviation crash” while
this case does not, because “the unique background of the Mississippi
legislation limiting compensatory damages” creates a stronger policy interest
in favor of applying Mississippi law than was present in Torrington, and because all of the plaintiffs here are residents
and domiciliaries of Mississippi, unlike the claimants in Torrington, whose residences and domiciles implicated three
different states.  We disagree.  As we have already discussed, the “unique
background” of the Mississippi damages cap is not implicated by these facts, as
neither Enterprise nor Dixie maintained any significant business presence in
Mississippi.  See id. at 849; Duncan,
665 S.W.2d at 421.  Furthermore, even
considering that all of the wrongful death and personal injury plaintiffs in
this case share the same state residence and domicile, that one factor does not
overwhelm the other considerations.  See Torrington Co., 46 S.W.3d at 848–49;
Hughes Woods Prods., 18 S.W.3d at 205;
Restatement (Second) of Conflict of Laws
§ 145(1).

We conclude that Texas law should
be applied to the issue of compensatory damages available to the wrongful death
and personal injury plaintiffs in this case. 
Thus, the trial court’s interlocutory order was proper.

We overrule Enterprise and Dixie’s
sole issue.

Conclusion

          We
affirm the interlocutory order of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Keyes and Higley.











[1]
          Enterprise was the managing
partner of Dixie at the time of the explosion and had been Dixie’s managing
partner since July 1, 2005. 

 





[2]
          See Miss.
Code Ann. § 11-1-60 (2004) (providing
limit of $1 million in awarding non-economic damages against any civil
defendant other than health care liability defendant, providing limit of
$500,000 in awarding non-economic damages in medical liability actions, and defining
noneconomic damages as “subjective, nonpecuniary damages” arising from an
injury).

 





[3]           Section 51.014(d) of the Civil
Practice and Remedies Code allows interlocutory appeal of otherwise
unappealable orders if:

 

(1)   the parties agree that the order involves a
controlling question of law as to which there is substantial ground for
difference of opinion;

 

(2)  an
immediate appeal from the order may materially advance the ultimate termination
of the litigation; and

 

(3)  the
parties agree to the order.

 

Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d) (Vernon
2008).

 





[4]
          Some of the plaintiffs claiming
property damage are residents or domiciliaries of other states, but, by its
plain language, the trial court’s order does not affect the measure of damages
on the claims of property damage, and neither party argues for the application
of law from a jurisdiction other than Texas or Mississippi.