

NUMBER 13-11-00676-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

GRIZZLY MOUNTAIN
AVIATION, INC.,                                                    Appellant,

v.

HONEYWELL
INTERNATIONAL, INC.,                                              Appellee.

**On appeal from the County Court at Law No. 2
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Longoria
Memorandum Opinion by Chief Justice Valdez**

Appellant, Grizzly Mountain Aviation, Inc. ("Grizzly"), sued appellee, Honeywell International, Inc. ("Honeywell"), for property damages from a helicopter crash. Grizzly requested that the trial court apply Connecticut law on the issue of the economic loss rule to its suit. Honeywell requested that the trial court apply Oregon law, and

alternatively moved for summary judgment on the basis that, under Texas law, the economic loss rule barred Grizzly's lawsuit. By signed orders, the trial court denied both parties' requests to apply foreign law and granted Honeywell's motion for summary judgment. By three issues, Grizzly contends that: (1) the trial court erred in applying Texas law and/or Oregon law; (2) the trial court should have applied Connecticut law because it has a more substantial relationship to this case than Texas or Oregon; and (3) even if Texas law applies, the trial court's summary judgment against Grizzly is improper because the economic loss rule does not bar recovery of all of Grizzly's property damage. We affirm the trial court's order denying Grizzly's motion to take judicial notice of Connecticut law and to apply Connecticut law. We affirm the trial court's summary judgment in favor of Honeywell.

## I.    THE FACTS[1]

Grizzly filed a suit in Texas against Honeywell for products liability and warranty violations in connection with a helicopter crash that occurred in Oregon. Grizzly was the owner of the helicopter with a registration number of N263KA (the "accident helicopter"), and Honeywell manufactured the engine and various engine replacement components that had been installed in the accident helicopter. In its suit, Grizzly claimed that the catastrophic failure of the engine reduction gearbox caused the accident helicopter to lose power and crash. Grizzly alleged that Honeywell defectively designed and manufactured the engine and component parts that caused the engine to fail. Grizzly requested $3,350,000 in damages for property damage to the helicopter.

---

[1] We have based this section of our memorandum opinion on Grizzly's statement of facts.

Grizzly purchased the accident helicopter from its manufacturer, Kaman Aerospace Corporation ("Kamen") in June 2004. According to Grizzly, it also purchased a second helicopter from Kaman with a registration number of N133KA. Grizzly alleges that at some point, prior to the accident, it transferred the Honeywell-manufactured engine from the N133KA helicopter to the accident helicopter.

Grizzly filed a motion for the court to apply Connecticut law, alleging that the engine and component parts were designed and manufactured in that state. Honeywell moved for summary judgment. Honeywell also filed a motion for the court to apply Oregon law to the case. In its motion for summary judgment, Honeywell argued that Oregon's eight-year statute of repose barred Grizzly's suit; or alternatively, if Oregon law did not apply, Texas's economic loss rule barred Grizzly from recovering for property damage to the helicopter.

After a hearing, the trial court granted Honeywell's motion for summary judgment. The trial court did not specify the ground on which it granted the summary judgment. By two separate orders, the trial court also denied both Honeywell's motion to apply Oregon law and Grizzly's motion to apply Connecticut law. This appeal followed.

## II. CHOICE OF LAW

By its first issue, Grizzly challenges the trial court's determination that Oregon law applies to this case. We conclude this contention is without merit because the trial court explicitly denied Honeywell's motion to apply Oregon law by signed order. Accordingly, we overrule Grizzly's first issue to the extent it argues that the trial court erred in applying Oregon law. By its first and second issues, Grizzly argues that the trial court erred in applying Texas law and not applying Connecticut law.

3

## A. Standard of Review

Which state's law governs an issue is a question of law for the court to decide. *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 955 S.W.2d 853, 856 (Tex. 1996); *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 357–58 (Tex. App.—Dallas 2004, pet. denied). Accordingly, we must review the trial court's decision to apply Texas law in this case de novo. *Minn. Mining & Mfg. Co.* 955 S.W.2d at 856.

Texas courts presume that Texas law applies. *PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 760–61 (Tex. App.—Houston [14th Dist.] 2003, pet. denied); *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi 1999, pet. denied). Texas courts can also presume that another state's law is the same as Texas law absent proof or argument to the contrary. *Coca–Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 685 (Tex. 2006); *Pittsburgh Corning Corp.*, 1 S.W.3d at 769. The party requesting application of a foreign law has the initial burden of showing that the foreign law conflicts with Texas law. *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004) ("In reviewing the trial court's decision, we must first decide whether Texas law conflicts with the laws of other interested states, as there can be no harm in applying Texas law if there is no conflict."); *Greenberg Traurig of N.Y., P.C. v. Moody*, 161 S.W.3d 56, 69 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("A court must make a conflicts-of-laws decision only when the case is connected with more than one state and the laws of the states in question differ on one or more points in issue.") (citing *Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 650 (Tex. App.—Houston [14th Dist.] 1995, writ dism'd w.o.j.), *leave granted, mand. denied*, 951 S.W.2d 394 (Tex. 1997)). Once the requesting party has shown that a conflict exists, it must

4

then show that the foreign law applies. *Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d at 94.

A party requesting a Texas court to apply another state's law must comply with rule of evidence 202. *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 769 (Tex. App.—Corpus Christi 1999, pet. denied); *see PennWell Corp.*, 123 S.W.3d at 760–61 (applying rule 203 to determine whether foreign law applied). Rule 202 states:

> A court upon its own motion may, or upon the motion of a party shall, take judicial notice of the constitutions, public statutes, rules, regulations, ordinances, court decisions, and common law of every other state, territory, or jurisdiction of the United States. *A party requesting that judicial notice be taken of such matter shall furnish the court sufficient information to enable it properly to comply with the request*, and shall give all parties such notice, if any, as the court may deem necessary, to enable all parties fairly to prepare to meet the request. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken. Judicial notice of such matters may be taken at any stage of the proceeding. The court's determination shall be subject to review as a ruling on a question of law.

TEX. R. EVID. 202. (Emphasis added). Therefore, under rule 202, if the requesting party "fails to provide adequate proof of the content of [the other state's] law, the law of that jurisdiction will be presumed to be the same as Texas law." *Colvin v. Colvin*, 291 S.W.3d 508, 514 (Tex. App.—Tyler 2009, no pet.); *Pittsburgh Corning Corp.*, 1 S.W.3d at 769 ("[T[he failure to provide adequate proof relieves the court of [the] requirement [under 202 to take judicial notice] and results in a presumption that the law of the foreign jurisdiction is identical to the law of Texas."). Rule 202 requires the movant to "provide sufficient information to the trial court to determine the foreign law's applicability to the case." *Id.* (citing *Daugherty v. So. Pac. Transport Co.*, 772 S.W.2d 81, 83 (Tex. 1989)); *Holden v. Capri Lighting*, 960 S.W.2d 831, 833 (Tex. App.—Amarillo 1997, no pet.) ("If

5

the court is not furnished with 'sufficient information' to establish the law of another state, the trial court may, in its discretion, choose not to judicially notice the sister-state law.") (citing *Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex. 1963)). "The determination of the movant's compliance with these requirements is within the discretion of the trial court." *Colvin*, 291 S.W.3d at 514.

## B. Applicable Law

Under Texas law, the economic loss rule forecloses strict liability claims based on a defective product that damages only itself but not other property. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415–417 (Tex. 2011) (citing *Signal Oil & Gas Co. v. Universal Oil Prods.*, 572 S.W.2d 320, 325–26 (Tex. 1978)); *Mid Continent Aircraft Corp. v. Curry County. Spraying Serv., Inc.*, 572 S.W.2d 308, 312–13 (Tex. 1978); *Nobility Homes of Tex., Inc. v. Shivers*, 557 S.W.2d 77, 82 (Tex. 1977). The economic loss rule "'applies when losses from an occurrence arise from failure of a product and the damage or loss is limited to the product itself.'" *Sharyland Water Supply Corp.*, 354 S.W.3d at 417–18. The economic loss rule applies in some circumstances even when parties are not in privity—such as those involving a remote manufacturer and a consumer in the defective product context. *Id.*

## C. Discussion

Before the trial court was required to determine whether Connecticut or Texas law applies, Grizzly had the initial burden to show that a conflict exists between Texas and Connecticut law. *See Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d at 94. In order to meet this burden, Grizzly alleged that there is a conflict between the application of Connecticut's economic loss rule and Texas's economic loss rule. Specifically, Grizzly

6

claimed that under Connecticut's economic loss rule, "other property" is defined more broadly than in Texas. Therefore, Grizzly reasoned that the helicopter and possibly the engine that were allegedly damaged due to Honeywell's defective product would be considered "other property" by the Connecticut courts while in Texas those items would be considered integrated and damages to those items would not be recoverable in tort.[2]

To support its argument that Connecticut law differed in this respect, Grizzly cited to the trial court *Mountain West Helicopter, LLC v. Kaman Aerospace Corporation*, 310 F. Supp. 2d 459, 467 (D. Conn. 2004). Grizzly claimed that in *Mountain West*, the court determined that when a component part allegedly causes damage to a helicopter, the helicopter is considered "other property" and damages to it are recoverable under the economic loss rule. *See id.* Thus, according to Grizzly, in Connecticut, recovery for damages to the helicopter is not barred by the economic loss rule. We disagree with Grizzly's interpretation of *Mountain West*.

In *Mountain West*, a clutch malfunctioned causing several helicopters to crash and sustain substantial damage.[3] *Id.* at 462. The *Mountain West* court stated that the economic loss rule did not bar the plaintiff's claims for damage to the helicopters because the plaintiffs were claiming damage to "other property." *Id.* at 466–67. However, the court did not determine whether the helicopters were, in fact, "other property" because the defendant did not challenge the plaintiff's characterization of the

---

[2] We note that in its challenge to the trial court's summary judgment, Grizzly argues that even under Texas's economic loss rule, its claim is not precluded because it purchased the engine with the allegedly defective part in a separately bargained-for transaction. Thus, Grizzly argues that even under Texas's economic loss rule, the accident helicopter is considered "other property."

[3] The clutch at issue in *Mountain West* had replaced the original clutch upon the manufacturer's urging and arguably had been separately bargained-for. *Mountain W. Helicopter, LLC v. Kaman Aerospace Corp.*, 310 F. Supp. 2d 459, 461 (D. Conn. 2004).

7

helicopters as "other property." *Id.* at 466. Because the court was not asked to make such a determination, there is no holding in *Mountain West* that the helicopters are considered "other property."[4] Therefore, we conclude that *Mountain West* does not show, as Grizzly argued, that a conflict exists between Texas and Connecticut law on whether the accident helicopter constitutes "other property."

On appeal, Grizzly claims that it met its burden of showing that a conflict does exist between Texas and Connecticut law because Connecticut law provides that "property damage claims are not considered commercial losses under the CPLA [the Connecticut Products Liability Act]." Grizzly states that the *Mountain West* court held that "commercial loss does not include property damage" and that "the CPLA specifically allows recovery for 'damage to property, *including* the product itself.'" (Emphasis in original). However, Grizzly never argued to the trial court that Connecticut's CPLA is in conflict with Texas law or that it was entitled to damages under that theory of law. Instead, Grizzly merely argued that Connecticut's application of the economic loss rule is broader than Texas's application. Therefore, Grizzly's argument failed to meet its burden to show to the trial court that a conflict existed between Texas and Connecticut law.[5]

Also on appeal, citing *Sylvan R. Shemitz Designs, Inc. v. Newark Corp.*, 291 Conn. 224, 231, 967 A.2d 1188 (2009), Grizzly states that the Connecticut Supreme

---

[4] Moreover, the court in *Mountain West* decided whether dismissal of the plaintiff's cause of action was erroneous. The standard of review "require[d] no factual findings by the trial court." *Id.*

[5] The *Mountain West* court also stated that its interpretation of the phrase "commercial loss" "is consistent with how the majority of the courts [in Connecticut] addressing the issue have resolved the issue, albeit not under the [CPLA]." *Id.* at 465. In a footnote, the court acknowledged that the Connecticut superior courts that have addressed the issue of what constitutes "commercial loss" "are, generally speaking, divided on the matter." *Id.* at 465 n.3.

8

Court has determined that "[c]laims for damage to property, whether to a component part or the entire product, are not commercial losses under the CPLA and thus are not barred." Grizzly maintains that the CPLA applies to its claims and that common law products liability principles do not apply. However, Grizzly did not present this argument or case to the trial court. In the trial court, Grizzly stated, "Texas, Connecticut and Oregon apply the economic loss doctrine to prevent the recovery of purely economic losses in tort and products liability cases. However, the application of each state's law differs which would lead to varying results." Grizzly then explained that a conflict existed between Connecticut and Texas law because application of Connecticut's economic loss rule would result in a finding that the damaged helicopter and possibly its engine are "other property." Grizzly explicitly stated that Connecticut courts apply the economic loss rule and provided the trial court with a case applying Connecticut law and analyzing whether the economic loss rule barred the plaintiff's claims in Connecticut. Grizzly never claimed in the trial court that the economic loss rule does not apply because its claim is governed by the CPLA. Moreover, Grizzly failed to argue in the trial court that the CPLA conflicts with Texas law.[6] As stated above, absent proof or

---

[6] Moreover, *Shemitz* is distinguishable. The plaintiffs in *Shemitz* bought boots from the defendant in order to manufacture and sell light fixtures. *Sylvan R. Shemitz Designs, Inc. v. Newark Corp.*, 291 Conn. 224, 231, 967 A.2d 1188 (2009). The plaintiff alleged that the boots were defective and caused damage to the light fixtures that it manufactured and then sold to its customers. *Id.* at 227. The plaintiff repaired the light fixtures that had been sold to its customers at its own expense and then sued the defendant for reimbursement. *Id.* at 228. The trial court granted the defendant's motion to strike the plaintiff's causes of action. *Id.* at 229. The trial court reasoned that "although 'the alleged damage to the light fixtures and boots was undoubtedly 'damage to property' with respect to the owners of the property at the time the property damage occurred, [the plaintiff] was not such an owner.'" *Id.* The plaintiff appealed to the higher court. *Id.*

The issue before the *Shemitz* court was whether "damage to property" as stated in the CPLA "pertains only to property that is owned by the party seeking to recover under the act." *Id.* at 232. The court held that it did not. The court stated, "Our disagreement with the statutory interpretation urged by the defendants and adopted by the trial court stems from the fact, first, that the language of the act imposes no express requirement that a claimant own the property that has been damaged in order to

9

argument to the contrary, the trial court could have presumed that Texas and Connecticut law are the same. *See Coca–Cola Co.*, 218 S.W.3d at 685. Without argument and proof of the conflict, the trial court was under no obligation to find that Connecticut law differs from Texas law. *See* TEX. R. EVID. 202.

Pursuant to rule 202, Grizzly was required to provide the trial court with sufficient information to make its choice of law determination before the trial court was required to apply Connecticut law.[7] *See* TEX. R. EVID. 202. Here, Grizzly failed to cite *Shemitz* or make its appellate arguments in the trial court. Therefore, we are unable to conclude, without any argument or authority on point from Grizzly supporting such a conclusion, that the trial court should have determined that the CPLA applies to the facts of this case and that there is a conflict with Texas law and the CPLA. *Colvin*, 291 S.W.3d at 514; *Holden*, 960 S.W.2d at 833. Accordingly, we conclude that Grizzly did not provide

---

bring an action seeking compensation for damage to that property." *Id.* at 231. The court then reversed the trial court's grant of the defendant's motion to strike the plaintiff's claims. *Id.* at 242.

Here, Honeywell did not sell any item to Grizzly and Grizzly is not seeking recovery of damage to property owned by someone else. Instead, according to Grizzly, Honeywell manufactured the engine that was later purchased by Kaman. After buying the engine, Kaman manufactured the accident helicopter and sold it to Grizzly. However, *Shemitz* does not concern a component part manufacturer that sold its part to the manufacturer of the finished product. Therefore, it does not support a finding as Grizzly argues, that "[c]laims for damage to property, whether to a component part or the entire product, are not commercial losses under the CPLA and thus are not barred." Grizzly has not cited any Connecticut law analyzing whether the type of loss suffered by Grizzly is a commercial loss under the CPLA. Therefore, even if Grizzly had argued the *Sehmitz* case before the trial court, it has not met its burden of showing that the law in Connecticut differs from the law in Texas. *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 672 (Tex. 2004); *see also Aliki Foods, LLC v. Otter Valley Foods, Inc.*, 726 F.Supp.2d 159, 164 (D. Conn. 2010) (explaining that the law in Connecticut regarding the economic loss rule is unsettled and confusing but nonetheless applying the economic loss rule to facts of case).

[7] "Although appearing under the subtitle 'Judicial Notice' in the Texas Rules of Evidence, the procedure established under Rule 203 for presentment of foreign law is not considered a judicial notice procedure because that term refers only to adjudicative facts and not to matters of law." *PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 760–61 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 525 (Tex. App.—Texarkana 1993, writ denied)). Therefore, a party requesting application of foreign law must follow the specific procedures set forth in Rule 203. *Id.* at 761. "Moreover, a party requesting judicial notice must furnish the court with sufficient information to enable it to properly comply with the request; otherwise, the failure to provide adequate proof results in a presumption that the law of the foreign jurisdiction is identical to that of Texas." *Id.*

10

the trial court with sufficient information to establish that Connecticut law conflicts with Texas law. *See* TEX. R. EVID. 202. Therefore, the trial court was not required to determine whether Connecticut law applies to this case. *See Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d at 94. We overrule Grizzly's first and second issues.

## III. SUMMARY JUDGMENT

### A. Standard of Review

We review the grant of a traditional motion for summary judgment de novo. *Valence Operating Company v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Tex. Integrated Conveyor Systems, Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 365 (Tex. App.—Dallas 2009, pet. denied). A defendant is entitled to summary judgment if the defendant either disproves at least one element of the plaintiff's cause of action or the party pleads and conclusively establishes each essential element of an affirmative defense as a matter of law. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).

The moving party carries the burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex. 2005). All evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. *D. Houston, Inc.*, 92 S.W.3d at 454; *Tranter v. Duemling*, 129 S.W.3d 257, 260 (Tex. App.—El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. *D. Houston, Inc.*, 92 S.W.3d at 454. Once the defendant establishes a right to summary judgment as a matter of law the burden shifts to the plaintiff to present

11

evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex. 1979).

**B.    Discussion**

By its third issue, Grizzly challenges the trial court's grant of summary judgment in favor of Honeywell. Specifically, Grizzly argues that its claims are not barred by the economic loss rule because "[u]nder Texas law, 'other property' includes property that is separately bargained for." *See Am. Eagle Ins. Co. v. United Technologies Corp.*, 48 F.3d 142, 145 (5th Cir. 1995) (explaining that there was no evidence that the plaintiff had separately bargained for the allegedly defective engine and concluding accordingly that the aircraft hull was not "other property") (citing *Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925 (5th Cir. 1987). Grizzly claims that it is "undisputed that [it] purchased the replacement engine in a separately bargained for transaction." Grizzly states that it purchased the "replacement (accident) engine" from Kaman "in a separate transaction for another helicopter (N133KA) and the "replacement engine was subsequently installed into the accident helicopter." Thus, according to Grizzly, "[T]he helicopter's airframe is 'other property' from the engine that was in place at the time of the accident because the accident engine and airframe were separately bargained for and the engine was installed by Grizzly after it purchased the helicopter."

We are not persuaded by Grizzly's argument. Here, Grizzly did not bargain with Honeywell to purchase the allegedly defective component part. *See Pugh v. Gen. Terrazzo*, 243 S.W.3d 84, 93–94 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (deciding there was no evidence that the plaintiffs had a contractual relationship with the supplier of allegedly defective materials used in the installation of an exterior insulated

12

finishing system [(EIF)] and determining that without such evidence, the damage caused by the EIFs was not to "other property"); *see also Am. Eagle Ins. Co.*, 48 F.3d at 145 (concluding that an airplane allegedly damaged by a defective engine was not "other property" under Texas's economic loss rule and noting that there was no summary judgment evidence that the plaintiff separately bargained with the engine's manufacturer because the engine had been installed prior to the plaintiff's purchase of the airplane). There is no summary judgment evidence showing that Grizzly formed a contractual relationship with Honeywell regarding the allegedly defective engine of the accident helicopter. *See Pugh* 243 S.W.3d at 93–94.

Furthermore, Grizzly cites no authority, and we find none, supporting a conclusion that when a party purchases a finished product and then replaces a component part with a part from another finished product, that party may escape application of the economic loss rule and prevail in strict liability. Grizzly does not dispute that it purchased the accident helicopter with the allegedly defective engine after bargaining with the helicopter's manufacturer, Kaman and that Honeywell did not replace the engine.[8]

*Equistar Chemicals, L.P. v. Dresser-Rand Co.*, 123 S.W.3d 584 (Tex. App.—Houston [14th Dist.] 2004), *rev'd on other grounds by* 240 S.W.3d 864, 867 (Tex. 2007), is instructive on the issue.[9] In *Equistar*, the plaintiff sued the defendant for damages that resulted from the failure of integral components in two large compressors. *Id.* at

---

[8] We note that the contract between Grizzly and Honeywell is not in the appellate record.

[9] Although the Texas Supreme Court reversed the court of appeals' decision in *Equistar*, both parties have cited to it and the Texas Supreme Court did not reverse on the basis that we find instructive on the matter. *See Equistar Chems., L.P. v. Dresser–Rand Co.*, 240 S.W.3d 864, 867 (Tex. 2007) (concluding that the court of appeals wrongfully determined that the defendant had preserved its economic loss rule objection).

585. After the trial court denied the defendant's motion for summary judgment, a jury found the defendant liable under, among other theories, strict liability and awarded the plaintiff $3.6 million. *Id.* The court of appeals reversed the judgment. *Id.* The *Equistar* court explained that the plaintiff's claims for strict liability were barred by the economic loss rule and that the remaining causes of action were barred by the applicable statute of limitations. *Id.* at 586. In order to determine whether the statute of limitations had in fact run, the *Equistar* court first determined whether the claims were in tort or contract. *Id.*

The *Equistar* court explained that, although the plaintiff had recovered under both its tort and warranty theories, Texas law does not allow recovery for both. *Id.* The court stated that, by adopting the economic loss rule, Texas has drawn a bright line between warranty and product liability claims. *Id.* at 586–87. The court explained that in transactions between commercial parties, "if damage occurs only to the product that passed between them, the claim is one for economic loss and must be brought on the parties' contract; conversely, if there is physical injury to persons or 'other property' (that is, property other than the product itself), those claims may be brought in tort." *Id.* at 587.

The court then analyzed whether damage by component and replacement parts to the finished product constitutes damage to other property. *Id.* at 587–90. Equistar, the plaintiff, had purchased impellers which worked in concert with compressors to produce ethylene and propylene. *Id.* at 585. The plaintiff replaced the original impellers with larger impellers that did not operate correctly. *Id.* The plaintiff then reduced the impellers to the original size. *Id.* These impellers failed, and the plaintiff sued the

defendant. *Id.* The plaintiff claimed that the impellers should be considered "the product" and that the compressors should be considered "other property for which damages are recoverable in tort." *Id.* at 587. The court disagreed and concluded that the impellers were component parts of the compressors; thus, the compressors could not be considered "other property." *Id.* at 588.

Next, the plaintiff claimed that some of the failing impellers had been replaced and were not original components; thus, its tort claim was not barred by the economic loss rule. *Id.* The plaintiff argued that "[b]ecause they were not a part of the original sale . . . the replacement impellers must be considered a separate product from the compressors." *Id.* The court noted that Texas courts had not addressed the issue of replacement parts, but that other courts had not generally made a distinction between replacement and component parts when applying the economic loss doctrine. *Id.* (citing *East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986) (making no distinction between damage caused by replacement and original component parts)). The *Equistar* court determined, that when replacement parts are provided by the original seller, those parts do not make the original product "other property." *Id.* at 589.

Applying the above stated reasoning, we conclude that Grizzly's replacement of the original engine in the accident helicopter with another engine purchased from the same manufacturer did not make the helicopter "other property." *See East River Steamship Corp.*, 476 U.S. at 867. We find no distinction between a replacement and original component part and conclude that the engine constituted a component of the helicopter in this case. *See id.* When analyzing application of the economic loss rule, the proper inquiry is to determine whether a loss is more appropriately compensated

15

through tort law or under the Uniform Commercial Code ("UCC"). *See Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.,* 572 S.W.2d 308, 310 (Tex. 1978) (determining whether the nature of the plaintiff's loss due to damage from a defective part to the finished product constitutes a strict liability claim or a contractual claim brought pursuant to the UCC). Here, Grizzly purchased the accident helicopter as part of its bargain with Kaman, the helicopter's manufacturer. Thus, Grizzly's claim is more properly brought under the UCC.[10]

Moreover, "[i]n regard to application of the economic loss doctrine to losses arising out of a defective product when there is no occurrence of 'personal injury' or damage to 'other property,' Texas courts have rejected the argument that damage to a finished product caused by a defective component part constitutes damage to 'other property,' so as to permit tort recovery for damage to the finished product." *Pugh*, 243 S.W.3d at 91 (citing *Murray v. Ford Motor Co.*, 97 S.W.3d 888, 891 (Tex. App.—Dallas 2003, no pet.) (holding that although component part's failure caused damage to the plaintiff's truck, the damage was to the product itself and not to other property; thus, the plaintiff's claim for strict liability was barred by the economic loss rule); *Am. Eagle Ins. Co.*, 48 F.3d at 145. Additionally, in *Signal Oil*, 572 S.W.2d at 325, the Texas Supreme Court held that "where only the product itself is damaged, such damage constitutes economic loss recoverable only as damages for breach of an implied warranty under the [UCC]." In *Mid Continent Aircraft Corporation*, the plaintiff sued for damage caused to an airplane due to the failure to attach a small crankshaft gear bolt lock plate when the engine was overhauled. *See* 572 S.W.2d at 310. The court stated that "Texas has

---

[10] Grizzly sued Kaman for the damage to the accident helicopter; however, Kaman is not a party to this appeal.

16

recently adopted the rule that economic loss resulting from a product with defective workmanship and materials is not recoverable in strict liability. That loss is merely loss of value resulting from a failure of the product to perform according to the contractual bargain and therefore is governed by the [UCC]." *Id.* at 311. The court held that the damage caused to the airplane by the defective engine was not damage to "other property." *See id.* at 313.

We find the facts of this case analogous to the facts of *Mid Continent Aircraft Corporation*. Here, the component part, the engine, allegedly caused damage to the finished product, the accident helicopter. Thus, we conclude that the damage to the accident helicopter did not constitute damage to "other property." *See id.* Accordingly, the economic loss rule bars Grizzly's strict liability claims against Honeywell. Honeywell carried its burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Diversicare General Partner, Inc.*, 185 S.W.3d at 846; *Browning*, 165 S.W.3d at 344. We overrule Grizzly's third issue.

## IV. CONCLUSION

We affirm the trial court's order denying Grizzly's motion to apply Connecticut law and the trial court's summary judgment.

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
17th day of October, 2013.